BALLARD
*vs.*
MERCHANTS'
INS. CO.

BALLARD *vs.* MERCHANTS' INSURANCE COMPANY.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where cotton is shipped by the agent of the plaintiff, and consigned to J.
L., who receives a bill of lading, and about the same time is directed by
the agent to *turn over* the cotton to R. B. & Co., the commission
merchants of the plaintiff, and in the meantime the cotton is lost by the
perils of the river: *Held,* that having been consigned to J. L. by the
shipment, it was protected by his open policy taken out of the office of
the defendants *for whom it might concern,* making insurance on all cotton
in bales shipped, or to be shipped, to the consignment of J. L.

It is not of the essence of a consignment that the consignee shall sell or dispose
of the property. It is enough if he has a right to receive it, of which the
bill of lading is evidence, even if he is directed to deliver it over to another
agent to sell for the owner.

When an open policy of insurance once attaches to property consigned, the
consignee becomes the agent of the shipper, and can do no act to deprive
the latter of the right to sue in his own name on the policy.

This is an action in which the plaintiff claims indemnity
for seven bales of cotton shipped from Alexandria, on Red
River, and consigned to John Linton, in New-Orleans, and
lost by the perils of the river, but protected by an open policy
of insurance, taken out of the office of the defendants by the
consignee. The defendants pleaded the general issue.
They admitted the execution of the policy, but averred that
all claim to loss on the part of the plaintiff had been waived
and abandoned by John Linton, in whose name the policy
was made, who had settled and liquidated all claims arising
under it; that property to the full amount covered by the
policy, had been declared by said Linton to these respondents as
included in it, without including that claimed by the plaintiff.

The facts in evidence show, that in October, 1833, James
Norment shipped seven bales of cotton, belonging to Dr. B.
Ballard, on board the steamer Paul Clifford, consigned in a

bill of lading to John Linton, of New-Orleans.    The boat and

cargo were lost on the way down, by the perils of the river.

John Linton had taken out an open policy of insurance from the Merchants' Insurance Company, *on account of whom it might concern*, embracing property shipped on board steam boats not condemned, and *consigned* to him in New-Orleans.

Norment, witness for plaintiff, and who made the shipment, testifies that he shipped the cotton in question without any order from Dr. Ballard at that time, and his reason was that cotton at that time bore a high price, and he wished his friend to avail himself of the prices, then paid for cotton ; that at the time he made the shipment, he was under the impression, that John Linton was the commission merchant of Dr. Ballard, and filled up the bill of lading accordingly ; but a short time afterwards, having been informed of his error, he wrote to Mr. Linton, believing he had received the cotton, to turn it over to the house of Reynolds, Byrne & Co., supposing they would refund all charges on said cotton to Mr. Linton ; he directed them to receive the cotton, with no other instructions, than to receive it on account of Dr. Ballard, saying nothing about insurance, believing it would receive the benefit of Mr. Linton's policy, who, if he had received it, witness expected would have charged the cotton with premium of insurance, freight, &c., as it was consigned to him.

Thompson, witness for plaintiff, and clerk to Linton, says, he was in the habit of presenting bills of lading of property received by the house of John Linton, to the insurance offices, where it was insured, and presented it in this case ; that he told Mr. Morgan, the president of the Merchants' Insurance Company, that he believed the seven bales marked *Ballard*, were not intended for Mr. Linton, but for the house of Reynolds, Byrne & Co., having been shipped in the absence of the plaintiff ; that Mr. Linton was not the usual agent of the plaintiff, nor was Mr. Norment the agent of Mr. Linton, who made the shipment for the plaintiff ; but that the cotton in question was shipped by Mr. Norment to Mr. Linton, supposing he was Dr. Ballard's merchant, and on discovering

EASTERN DIST.
March, 1836.

BALLARD
vs.
MERCHANTS'
INS. CO.

that Reynolds, Byrne & Co. were his merchants, wrote immediately to Mr. Linton, stating that the cotton was intended for Reynolds, Byrne & Co. On mentioning these circumstances to Mr. Morgan, the president of the company, he struck the plaintiff's name from the statement witness handed him for settlement, and gave no other reason than what had been stated to him, that the cotton was not intended for Mr. Linton. Witness further states, that the policy was then filled up by Mr. Linton, without reference to the seven bales of plaintiff; that if the steam-boat had arrived safe with the cotton, he would not have reported it to the insurance office, as forming part covered by the open policy of insurance, on which a premium was to be charged, *although some persons here would have done otherwise*; that Mr. Linton has sometimes refused to pay bills for insurance on cotton sent to other houses here, by mistake, and has credited the insurance company for the premium, on the cotton being covered by his open policy.

Witness further states, that Mr. Linton did not intend to abandon any rights which he might have acquired under the policy in question. The account of the loss of the Paul Clifford, arrived about the same time that the letter countermanding the shipment was received by the house of Mr. Linton.

Dupuy, witness and secretary to the Merchants' Insurance Company, says, in all cases of settlement with Mr. Linton, they paid one half of the loss on cotton insured and covered by the open policy, and were credited with one half of the premiums on cotton received by Mr. Linton and intended to be covered by this policy; never knew of an instance of a loss similar to this having been paid by any insurance company; he would not have paid it. The Louisiana State Insurance Company had an open policy with Reynolds, Byrne & Co. at the time of the shipment of this cotton.

J. K. West, witness for plaintiff, and president of the Louisiana State Insurance Company, says that the office of which he is president, would have paid a loss on cotton shipped to a house having an open policy, through mistake,

supposing them to be the merchants the of planter who owned the cotton, provided the bill of lading was made out in the name of such house. Witness considers that the cotton is covered by the open policy under the bill of lading. The house receiving the cotton by mistake would, in that case, hand it over to the house it was intended for, subject to the charge of premium and other expenses.

EASTERN DIST.
*March*, 1836.

BALLARD
*vs.*
MERCHANTS'
INS. CO.

Hermann, witness for plaintiff, says he is a member of the house of Reynolds, Byrne & Co.; that they frequently receive cotton shipped to them through mistake, and always hand it over to the house for which it was intended, making out an account of charges for drayage, insurance, &c., which is paid by the houses for whom the cotton was intended, crediting the insurance company with the premium. Their house has paid such charges on cotton intended for them and received by other houses, and that others have done the same thing.

The district judge who tried the cause, was of opinion that in looking to the substantial object and purpose of this contract of insurance, as embraced by the open policy of Linton, it was evident the factor wished to protect his own interests, and that of his employers; of those who sought his services in any way, &c.; that with this view of the case, judgment must be rendered for the defendants. The plaintiff appealed.

*Worthington* and *Eustis*, for plaintiff.

1. The plaintiff having proved his interest in, and the loss of, certain property shipped in the Paul Clifford to John Linton, is entitled to maintain an action on a general policy covering all property shipped to John Linton.

2. Plaintiff is not bound by any arrangement of said Linton with defendants, unless such arrangement involves an assumption of responsibility on the part of said Linton.

3. The shipment in this case was a *bona fide* shipment to John Linton, on which the defendants are responsible for losses.

4. The defendants are responsible for the entire amount, notwithstanding the policy in another company.

EASTERN DIST.
March, 1836.

BALLARD
vs.
MERCHANTS'
INS. CO.

*J. Slidell,* for the defendants.

1. The cotton, for the loss of which indemnity is claimed from the defendants, was never in fact consigned to John Linton in whose name insurance was made. It was shipped to him through mistake, by a person having no authority to make a consignment, and the error was corrected as soon discovered by revoking the shipment, and directing Linton to hand it over, if received, to the real agents of the plaintiff. The case comes within the provision of the code declaring the defects of consent, which will invalidate a contract. The error was in relation to a fact which was the principal cause of making the shipment by the agency of Linton. *Louisiana Code, articles* 1813, 1815, 1817.

2. It was not the intention of Linton to cover by his policy, merchandise shipped to him under the circumstances of this case. See testimony of Thompson and Dupuy. Consequently the policy did not attach, and he could not have recovered on it. *Phillips on Insurance, pages* 57, 58, 59, 62 *and* 63. *2 Massachusetts Reports,* 369.

3. Linton could not have recovered, even if the policy attached, because he has not declared the loss. The policy has been filled by other risks, and the underwriters discharged. If any liability ever existed under the policy, the remedy of the plaintiff is against Linton. See testimony of Dupuy.

*Bullard, J.,* delivered the opinion of the court.

This is an action to recover of the defendants, as underwriters, the value of seven bales of cotton, belonging to the plaintiff, which he avers were shipped by his agent, at Alexandria, on Red River, to John Linton, and were covered by an open policy of insurance, procured by Linton, for whom it might concern, of the defendants. The loss by perils of the river is not contested. In the policy it is declared, that this insurance is on cotton in bales, &c., &c., shipped, or to be shipped, to the consignment of John Linton.

The defence consists, 1st. Of a denial that the plaintiff's cotton was covered by the policy, and 2d. An allegation that if the policy ever attached, all claim for the loss alleged to

have been sustained by the plaintiff, has been waived and abandoned by John Linton, in whose name the policy was made; that property to the amount for which said policy was effected, has long since been declared to the defendants, by said Linton, as covered by the policy; that they have paid large sums of money for losses accruing under the policy to Linton, who has settled and liquidated all claims resulting from it.

The first question thus presented by the pleadings is, whether the cotton alleged to have been lost, was contemplated by the contract, and covered by the policy, or in other words, was it shipped to the consignment of John Linton.

The bill of lading shows that the captain of the steamboat Paul Clifford, took on board seven bales of cotton, shipped by James Norment, which he engages to deliver to John Linton, or his assigns, and the plaintiff, in his petition, alleges that Norment was his agent. This appears to the court, on the face of it, to be a consignment. It authorised Linton, on paying the freight, to receive the cotton, and he would have a lien on the cotton for advance of freight and other charges. Admitting that Linton had no authority to sell, or make any other disposition of the property, we do not consider it of the essence of a consignment that the consignee should have such authority. It is enough if he had a right to receive it, and of that the bill of lading is sufficient evidence. If the bill of lading had been accompanied by a letter, instructing Linton on receiving the cotton to deliver it over to another person, or to store it, or to forward it to another market, it would nevertheless have been a consignment. The letter from Norment to Linton, requesting him to turn over the cotton to another house, is not inconsistent with the original consignment. It is true, Norment may have been in error in supposing that Linton was the general factor of the plaintiff, and consequently wrote to him, not revoking the consignment, but directing in what manner he was to dispose of the cotton. Norment, who made the shipment in the absence, and without any positive orders from the owner, testifies that he would not have shipped the

BALLARD
vs.
MERCHANTS'
INS. CO.

Where cotton is shipped by the agent of the plaintiff, and consigned to J. L., who receives a bill of lading, and about the same time is directed by the agent to *turn over* the cotton to R. B. & Co., the commission merchants of the plaintiff, and in the meantime the cotton is lost by the perils of the river: *Held*, that having been consigned to J. L. by the shipment, it was protected by his open policy taken out of the office of the defendants, for *whom it might concern*, making insurance on all cotton in bales shipped or to be shipped to the consignment of J. L.

It is not of the essence of a consignment, that the consignee shall sell or dispose of the property. It is enough if he has a right to receive it, of which the bill of lading is the evidence, even if he is directed to deliver it over to another agent, to sell for the owner.

EASTERN DIST.
*March*, 1856.

BALLARD
*vs.*
MERCHANTS'
INS. CO.

cotton, if he had not thought it would be protected by Linton's policy; and that on discovering that he was not the commission merchant of Ballard, he wrote to Reynolds, Byrne & Co. to receive the cotton from Linton, supposing they would refund the freight and charges of insurance. The error consisted, therefore, not in the consignment, but in supposing that Linton was already authorised by the owner to sell his cotton. Norment's letter and the bill of lading arrived at or about the same time, and not untill after the cotton had been lost. We are of opinion that the policy attached in favor of the plaintiff as soon as the shipment was made, as evidenced by the bill of lading.

The only remaining question is, whether Linton is shown to have done any act by which the defendants have been released from their obligation to Ballard. It appears that he presented the bill of lading of the plaintiff's cotton to the president of the insurance company, but with an intimation that probably it was intended for Reynolds, Byrne & Co. Upon this suggestion, the president struck the name of the plaintiff out of the statement handed for settlement. Other lots of cotton, lost at the same time, and shipped in the same bill of lading, were paid for, and the policy was filled by Linton without reference to these seven bales. Mr. Thompson testifies at the same time, that Mr. Linton did not intend to abandon any rights which he might have acquired under the policy. It is not pretended that, at the time those seven bales were lost, the policy had been filled by other property to the value which the defendants engaged to cover, nor that losses have been paid to the full amount insured. Ballard having a right to sue, in his own name, under a policy procured by Linton *for account of whom it may concern,* Linton must be considered in relation to him as an agent. If he had cancelled the policy, he would have rendered himself liable for the loss, and the payment of the loss to him, would have been a good and valid discharge. It does not appear that the policy was cancelled, and even as relates to Linton himself, it is by no means clear that he would not still have a right to maintain an action on it. In the case of *Russell*

When an open policy of insurance once attaches to property consigned, the consignee becomes the agent of the shipper, and can do no act to deprive the latter of the right to sue in his own name, on the policy.

vs. *Bangley, chief justice Abbott* said, "the general rule of law is, that if a creditor employs an agent to receive money of a debtor, and the agent receives it, the debtor is discharged as against the principal; but if the agent, instead of receiving the money, writes off money due from him to the debtor, then the latter is not discharged. In cases of insurance, usage may possibly introduce a different rule, but at all events, an underwriter has never been considered as discharged as against the assured, until his name has been stricken off the policy." 2 *Philips on Insurance,* 367. 4 *Barn. and Ald.,* 395.

Upon the whole, we think the plaintiff entitled to recover the value of the seven bales of cotton, deducting the amount of premium at one half per centum; but as the value is not shown by any evidence in the record, the case must be remanded.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled at the cost of the appellees, and it is further ordered that the case be remanded for a new trial.