William M. Lambeth and another *v.* The Western Marine and Fire Insurance Company.

Appeal from the Commercial Court of New Orleans, *Watts,* J. *Moise* and *W. M. Randolph,* for the appellants.
*Maybin,* for the defendants.

Garland, J. The plaintiffs claim the sum of $1,610, the value of ninety-two bales of cotton, which they say was consigned to to them as factors, belonging to Paup & Hicks, of Arkansas, and shipped from a landing on Red river, on the steamer Saline and covered by an open policy of insurance. The cotton was

Lambeth and another v. The Western Marine and Fire Insurance Company.

lost by the boat striking a snag, and sinking in a few minutes thereafter.*

The defendants admit the execution of the policy, but deny that any cotton was ever consigned to the plaintiffs by Paup & Hicks, which was covered by it. They allege and prove, that there is a clause in the policy which says, that " cotton is to be excepted from insurance, which shall be ordered not to be in-insured, of which the insurers are to be notified immediately on the receipt of such order; and the cotton of the parties thus excepted shall not afterwards be covered, without the consent of the insurers." They say that the cotton in question was intended to be consigned to Maddux, Pollard & Co. by Paup & Hicks; and that Paup & Hicks had given orders to Maddux, Pollard & Co., that said cotton was not to be insured, and directed them so to notify the insurers, which they did before the shipment; and that said cotton could not afterwards be covered by any policy of theirs, without their consent.

The facts, as we have elicited them from the letters of Paup, and the statement of the witnesses, which conflict in some points, are: That Paup and Paup & Hicks are cotton planters on Red river, and have been so since the year 1836 or 1837. Maddux, Pollard & Co. were their agents and factors in New Orleans. In 1839 these agents received the crops made in 1837 and 1838, and sold them. Paup was then in the city, and gave the agents orders not to insure the cotton of himself and partner in future, in the presence of the president of the company, of whom he at the same time inquired if he would insure against fire alone, and being answered affirmatively, he said he would give directions about that whenever he should make another shipment of cotton. In 1839, Maddux, Pollard & Co. took out an open policy from the defendants, to cover consignments of cotton to them for the next twelve months, not saying anything about the cotton of Paup & Hicks. In the spring of 1840, Paup consigned 61 bales of the crop made in 1839 to Maddux, Pollard & Co., and they, having forgotten the order given the year previous, said nothing to defendants about excepting it from the policy, paid

* The boat was lost on the 30th July, 1840.

the premium, and charged him with it. On the 29th of May, 1840, Paup writes to his factors, and, among other things, says : " By the time I can get my cotton down, it will be sometime in July. I shall ship my cotton to you, as soon as I can get it off. When I was in New Orleans, I told you I should not insure my cotton again, and in the presence of Mr. Matthews made the same remark, and asked him if the office would insure against fire alone ; he remarked that it would, at about half per cent. I then told you if I concluded to insure against fire, I would write you. I was surprised on receiving account of sales of my 61 bales, to find insurance charged. I presume you have not settled with the office yet ; any how, you must rectify the matter. As far as I am concerned, I cannot think of paying it." When this letter was received, it was shown to Matthews, the president of the company, by Pollard ; but he said that the company could not refund the premium then, as no exception had been made of Paup's cotton, or notice given of an intention not to insure it. Pollard then told the president to except the cotton of Paup and of Paup & Hicks from their policy, and as the premium was not refunded, and Paup would not pay it, Maddux, Pollard & Co. had to lose it. On the 18th June, 1840, Paup again writes: " In consequence of our river getting so low, I have not been able to send my cotton as expected ; but as soon as the raft is removed, and the boats begin to run, you may expect it." He then goes on to order various supplies for a person, for whom it would appear he was agent ; requests his factors to endeavor to procure $5,000 in Arkansas money for him, and, in other respects, shows the greatest confidence in them. So far there is no contradiction or doubt as to the testimony ; but as to what Paup's directions were about shipping the cotton, and as to what subsequently occurred, there are several discrepancies in the statements of the witnesses. We have examined their depositions and the circumstances under which they gave their testimony. All the witnesses in Arkansas were examined under commissions, and our opportunities of weighing their testimony are as good as those of the judge below. After a close examination of their statements, our views accord very nearly with those of the judge of the Commercial

Court as to their weight and effect. We have no doubt, that it was the intention of Paup to have the cotton consigned to Maddux, Pollard & Co., and that such were his instructions to the captain of the Saline, although he says that he was directed to consign it in the bill of lading to the plaintiffs. That statement we think is erroneous; at any rate the weight of the testimony is against it. Lyons and Cermenati say otherwise. The captain, from the fact of his having misunderstood, neglected or disobeyed the instructions of Paup (as we have no doubt he did), had a strong bias, if not positive interest, in making out as strong a case as he could for the plaintiffs. There is something suspicious about the bill of lading also. Cermenati swears positively that it was not made out until after the cotton was lost. Cummings, the captain, and Marble, the clerk, swear that a bill of lading was made out whilst the cotton was being taken on board; but that no one being at the landing to receive it, they brought it down to Fulton. There, both say, an alteration was made, and a new bill given, as there was an error in the first, and the purpose was to correct it. The error, according to their statement, was, in stating in the bill that the cotton was marked J. W. Paup, when it should have been Paup & Hicks. If this be true, the attempt to correct the error was very unfortunate, for the bill of lading filed states the cotton as "marked J. W. Paup, New Orleans," and that it was shipped by him. We do not think the effort to impeach the evidence of Lyons, Cermenati, and Marsh, has been successful. It is further proved, that neither Paup, nor Hicks, ever had any correspondence or acquaintance with the plaintiffs previously to this time. Even after the loss, neither of them wrote a line to the plaintiffs; but either Paup, or the clerk of the boat, sent the bill of lading and the protest to them, without a word of instruction or explanation, which looks unusual. The court below gave a judgment for the defendants, and the plaintiffs have appealed.

We have no doubt that the policy of Lambeth & Thompson would cover all the cotton really intended by the owners to be consigned to them; and upon the principles stated in the case of *Ballard* v. *The Merchants' Insurance Company* (9 La. 258), it would probably do so, even if the cotton was sent to them

through error, provided it was shown to have been the intention of the shipper or owner that it should be covered by some policy. But the reverse of that is proved conclusively in this case. In 1839, Paup told Matthews it was not his intention to insure for the future, except against fire. He so informed his agents, and when, from forgetfulness, they did insure, he disclaimed it, and compelled them to lose the premium; and we have no doubt that, if the cotton had arrived in safety, the owner of it would again have refused to pay the premium, on the ground that the defendants knew it was not his intention to insure at all. As it is lost he must bear the loss, and recollect that the contract of insurance is one based in principles of honesty and justice, and that neither party is permitted to take advantage of the other.

We think there is a mark ed difference between this case and that in 9 La. 258, relied on by the plaintiffs' counsel, and that the policy never attached. We do not question the right of the principal to change his agent, or of a planter to change his factor, whenever it is his interest or pleasure to do so; but it does not follow that by so doing, he can attach responsibilities to others without an equivalent, particularly when he had given notice of an intention not to have any thing to do with them. The policy is for the benefit of all those making a consignment, who really intend to avail themselves of it, and incur the premium; but those who evidently do not intend to do so, cannot avail themselves of the protection afforded.

*Judgment affirmed.*