EARL JACOB KNOWLES *vs.* SOUTH COUNTY HOSPITAL *et al.*

APRIL 25, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

CONDON, C. J. This is a bill in equity for the construction of and instructions relative to the last will and testament of Harry Knowles, late of the town of Narragansett, deceased. After the cause was ready for hearing in the superior court for final decree that court in accordance with the provisions of general laws 1938, chapter 545, §7, now G. L. 1956, §9-24-28, duly certified the cause to this court for our determination.

The testator executed his will on October 30, 1951. It was duly probated in the probate court of the town of Narragansett and Gordon L. Smith, George N. Hazard and Industrial National Bank were confirmed and have qualified as executors thereof. Under the second clause of the will the testator devised his homestead farm in the following manner:

"Homestead Farm: Whatever portion of Homestead Farm at Point Judith, Town of Narragansett, County of Washington, State of Rhode Island (free and clear, or rendered so by payment from any fund available: this payment to be made in full before any other distribution) of which I die possessed, excepting area transferred elsewhere in this will, and including contents of the farm house, unless otherwise assigned in this will, I transfer, for life tenure or life lease, to Earl Jacob Knowles, of Mist, County of Multnomah, State of Oregon, son of Irving Edwin and Elsa Knowles, also of Mist, Oregon; the said Earl Jacob Knowles being the fourth generation from, and including, George C. Knowles, who bought this farm in 1836 from Green Kinyon's heirs; *providing* the said Earl Jacob Knowles will reside on Homestead Farm for not less than three (3) months of each year, pay all taxes when due, keep the insurance paid in advance, pay for necessary repairs and upkeep, and grow, or have grown, at least a peck of Indian maize, or Rhode Island Johnycake corn, on the ear. Upon the death of Earl Jacob Knowles, Homestead Farm is to become the property of his oldest male heir, under the foregoing conditions, except Homestead Farm becomes his in fee simple upon

his fortieth (40th) birthday, whereupon he may lease or sell any or all land, or do whatever else he pleases with it: but it is hoped he will continue to own Homestead Farm, keeping it free and clear of all encumbrances, so it may be transferred in each succeeding generation to the oldest direct male heir. Complying with the foregoing conditions entitles Earl Jacob Knowles and his oldest male heir (and so on if this plan is followed) to have their names inscribed as owners on the ownership record sign at Old Point Judith Road and School House Lane leading to the farm house. Also, if and when convenient to residents of Homestead Farm House, the same may be open for public inspection one day of each fortnight, as well as for meetings of historical, patriotic or civil gatherings if space permits. Earl Jacob Knowles is to have three (3) months from his notification of this will in which to decide whether he will comply with these terms. Failure to comply with any of the foregoing terms, or neglect or inability to do so, will result in Homestead Farm becoming and remaining part of my estate, whereupon it is to be bequeathed to the Rhode Island State College for educational, recreational, historical, athletic and experimental purposes."

The language of that clause has given rise to the present controversy resulting in the filing of the instant bill by Earl Jacob Knowles, hereinafter referred to as the complainant. The respondents are the above-mentioned executors, South County Hospital hereinafter referred to as the hospital, Brown University hereinafter referred to as the university, Rhodes Island State College, now the University of Rhode Island, hereinafter referred to as the state college, the attorney general of the state in his official capacity as supervisor of charitable trusts, and the Town of Narragansett. All respondents filed answers to the bill, but primarily the only real controversy is between the complainant on the one side and the university, the hospital, and the state college on the other; and, in the event complainant does not prevail in his contention, secondarily between the state col-

lege on the one side and the university and the hospital on the other.

Briefly, complainant contends that the testamentary language must be construed to give him an estate in fee simple, and further that his admitted failure to comply with three of the conditions, namely, reside on the farm not less than three months in each year, pay taxes and insurance, pay for necessary repairs and upkeep, and grow or have grown at least a peck of "Rhode Island Johnycake corn," is of no consequence. On the other hand the university, the hospital, and the state college contend that complainant was given only a life estate subject to be defeated by his failure to perform any of the stipulated conditions. If they prevail in such contention they thereafter part company on the question as to whom the farm shall then go. The state college contends that under the testamentary language it takes a fee simple as a result of complainant's breach of the conditions. The university and the hospital argue that the whole devise to the state college is void as a perpetuity under the rule against perpetuities and therefore, in accordance with the provisions of G. L. 1938, chap. 566, §7, now G. L. 1956, §33-6-20, it goes under the residuary devise of the will to the state college, the university, and the hospital in equal shares.

The complainant points out that the key words of the clause are these: "Upon the death of Earl Jacob Knowles, Homestead Farm is to become the property of his oldest male heir, under the foregoing conditions, except Homestead Farm becomes his in fee simple upon his fortieth (40th) birthday * * *." He contends that the word "his" before the words "in fee simple" relates to Earl Jacob Knowles and that since he was over forty years of age at the death of the testator he, the complainant, became seized in fee simple and that all the foregoing language of the clause must be disregarded.

We cannot agree with such contention. The plain, gram-

matical construction of the quoted sentence relates the word "his" to the nearest preceding noun, "heir." And if we read the sentence in the context of the whole clause, as we should in seeking to find the intention of the testator, this construction becomes even clearer. In that sentence he was referring not to Earl Jacob Knowles to whom he had already given in express terms a life estate subject to certain conditions, but to the oldest male heir of Earl who would succeed him in possession of the farm under the same conditions, except that when he, the heir, reached the age of forty it would be his in fee simple, free of all conditions, the testator expressing only the hope that he, the heir, would retain the title to the farm and transmit it to the oldest male heir in the manner he, the testator, had done.

It is also clear from the context of the clause that it was the testator's intention to make the gift over to the oldest heir wholly dependent upon Earl's compliance with the express conditions. Having accepted the devise of the farm subject to such conditions he was obligated to perform them. *Sampson* v. *Grogan*, 21 R. I. 174. If at any time he failed to do so his life estate was to terminate, and in such event the gift over to his oldest male heir would fail. Under the language of the testator the farm would then in effect revert to his estate and ultimately go to the state college. See *Palmer* v. *Union Bank*, 17 R. I. 627, 632. This testamentary language is equivalent to a re-entry with all its consequences. It is generally understood that on a conveyance of an estate less than a fee, on condition subsequent, the grantor has both the reversion and a right of re-entry, which do not merge. 33 Am. Jur., Life Estates, Remainders, Etc., §208, p. 689. Re-entry for breach of express conditions destroys the subsequent limitation as well as the immediate estate on which the entry is made.

On this view there can be no question of a perpetuity. The hospital and the university contend that the state college is given a contingent remainder and that under the

terms of the will it may not vest within a life or lives in being at the testator's decease and twenty-one years thereafter and therefore it violates the rule against perpetuities. In the first place it should be noted that the gift is not a remainder because it does not await the regular expiration of the preceding life estate. If it were not for the testamentary language expressly providing for a reversion to the testamentary estate in the event of a breach of the conditions it would be a conditional limitation because it cuts down the preceding freehold estate before its regular termination. As is well known such a limitation is not good at common law, but under the statute of wills it is valid as an executory devise. It is always contingent and subject to the rule against perpetuities. But we need not consider here the devise to the state college in that light, in view of the testator's intention to provide for a reversion in the event of a breach of the conditions by either Earl or his oldest male heir.

Our opinion, therefore, is that the testator intended to give the farm to the state college in the event that any of the express conditions were broken. The complainant having admitted that three of such conditions were not complied with, the last sentence of the clause became operative and vested the title of Homestead Farm in "the Rhode Island State College for educational, recreational, historical, athletic and experimental purposes." In view of this construction it is unnecessary to answer the questions raised in the complainant's bill. Under such a bill it is the will which is certified here for construction in accordance with the provisions of G. L. 1956, §9-24-28, and not specific questions. *Rhode Island Hospital Trust Co.* v. *Johnston*, 81 R. I. 115.

On May 2, 1958 the parties may present to this court for approval a form of decree, in accordance with this opinion, for entry in the superior court.

## ON MOTION FOR REARGUMENT.

### MAY 2, 1958.

PER CURIAM. After our decision in the above case the complainant filed a petition in the nature of a request for permission to file a motion for reargument and to remand the case to the superior court. In support thereof his counsel has stated certain reasons on which he bases his contention that justice requires a reargument of the case. We have carefully considered such reasons and we are of the opinion that they raise no question which in the circumstances warrants reargument.

Motion denied.

*Charles H. Drummey,* for complainant.

*J. Joseph Nugent,* Attorney General, *Albert J. Hoban,* Assistant Attorney General, for Board of Trustees of State Colleges.

*James O. Watts,* for certain executors and Town of Narragansett.

*Daniel S. T. Hinman,* for South County Hospital.

*Tillinghast, Collins & Tanner,* for Brown University.