HORACE HAWES, RESPONDENT, *v.* BENJ. G. LATHROP, *et al.*, APPELLANTS.

ESTATE IN REVERSION—AT WHAT TIME THE RIGHT TO BECOMES ABSOLUTE.—The right to an estate in reversion becomes absolute on the happening of the event which terminates the intermediate estate.

IDEM.—When it was provided in a conveyance of real estate to certain parties *in trust* for a specified purpose, that if the trustees should declare by resolution that the objects of the trust were found to be impracticable, that the estate thereby conveyed should be determined, and the land revert to the grantor, *it was held* that on the happening of that event, the trust deed became void, and the right of the grantor became absolute.

MONEY REGARDED AS LAND.—The proceeds of a policy of insurance (effected by the trustees) for a loss happening to the property during the continuance of the trust estate, and not expended for the purposes of the trust, will, on the determination of the trust estate, be regarded, in equity, as real property, and will belong to the owner of the reversion.

FIXTURES.—The strictness of the earlier rule requiring a structure to be attached to the soil, in order to become a fixture, is being relaxed in this country.

IDEM.—An addition to a house already existing, is not personal property, but becomes, like the house to which it is attached, a part of the realty.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The case is stated in the opinion.

*W. H. Patterson,* for Appellants.

*First*—By the indenture, the land and buildings were conveyed to Lathrop and others, and *they,* and not plaintiff, had an *insurable* interest therein. (*Saddlers' Co.* v. *Badcock,* 1 Wilson, 10; 2 Atkyns, 534; *McCarty* v. *Com. I. Co.* 17 La. 365.)

*Second*—Defendants were under no obligations, express or implied, to insure the destroyed buildings. Had they omitted so to do, plaintiff would have had no remedy. (*King* v. *State M. F. I. Co.* 7 Cushing, Mass. R. 1.)

*Third*—Plaintiff not having paid any portion of the premium, and not being in any manner *privy* to the contract of insurance, defendants having paid the premium out of their individual, and not out of trust funds, have a right to the *insurance.* Defendants having voluntarily insured when they were under no obligation to do so, as plaintiff could not maintain an action for the omission, he occupies no better position because of their voluntary act. They did no wrong to him by effecting the insurance, and collecting the amount

underwritten. Plaintiff has no better right to the insurance money than he would have to maintain an action against defendants, to compel them to rebuild, or pay the value of the buildings which were on the premises when the first deed was executed.

*Horace Hawes,* in *pro. per.,* for Respondent

*Land,* as Lord Coke defines it, includes "not only the ground or soil, but everything which is attached to the earth, whether by the course of nature, as trees, herbage and water, or by the hand of man, as houses and other buildings, and which has an indefinite extent upwards as well as downwards, so as to include everything terrestrial under or over it. (2 Bl. Com. 18.)

Not only is the soil, and all that is thus attached to it, *land,* within the *legal* signification, but some other things, apparently movable and personal, are deemed land in equity jurisprudence. Thus, shares in the property of a corporation are real or personal property, according to the nature, object and manner of the investment. (Cruise Tit. 1, Sec. 3.) So, *money,* agreed or directed to be laid out in the purchase of land, is considered in equity as land. (*Id.* Sec. 4.) Money thus situated, if it come into the hands of the person entitled to the land to be purchased with it, ceases to be land. But while it is in the hands of a third party, some act must be done by the person entitled to it to show that he considers it as money, otherwise it will still be deemed land. (*Id.* Fonb. B. 1, Chap. VI, Sec. 9; *Walker* v. *Denne,* 2 Ves. Jr. 170; *Biddulph* v. *Biddulph,* 12 Ves. 161.) And money thus situated may be entailed as land. (Cruise, Tit. 2, Chap. I, Sec. 26.)

And it is subject to the estate of tenancy by the courtesy. (Cruise, Tit. 5, Chap. II, Sec. 13.) As between trustees and *cestui que trust,* money is in equity treated as land, and the land as money, according to circumstances, in order to protect the rights of *cestui que trust.* (Cruise, Vol. 1, p. 449; 2 P. Wm. 706; 3 *Id.* 215.)

The deed was of the land, and the *buildings,* which the term land includes. No one can doubt that. And while the

defendants had ample power to administer and use the
granted land and premises for the prescribed purposes, they
had "no power to sell, mortgage, or otherwise encumber the
granted land *or* premises, without the consent of the party
of the first part (the plaintiff), or his heirs." Thus, in this
as in other clauses recognizing the grantor's *subsisting* interest
as the reversioner, as well as his natural desire, and *reserved*
right to protect from diversion and waste what he had freely
dedicated to benevolent uses. But the reversion, like all
penalties to secure its intended object, must be *enforced.*
The right of reversion is the right to have back again all
that was given, in whatever shape existing — land converted
into money, or money converted into land. The trustees in
the present case could not sell or encumber the buildings,
which were part of the land, nor could they, if the buildings,
being insured, were *destroyed,* and, the *value* paid alienate or
*encumber* the funds, much less appropriate them to their
private use ; or, what is the same thing, distribute and donate
what was not theirs. Now, what was the reversionary inter-
est which the plaintiff had ? "Every estate and interest not
embraced in an express trust, and not otherwise disposed of,
remains in, or reverts to, the person who created the trust,
and he may dispose of the lands subject to the trust, or in
the event of its failure or termination, and the grantee or
the devisee will have a legal estate as against all persons but
the trustee." (1 Hilliard on Real Prop. 360, Sec. 11 ; 4
Kent, 310.)

Now, the defendants were entrusted with the possession
and administration of the property (land and buildings), for
the maintenance of a school. If that object failed (whether
with or without their fault is immaterial), it was the duty of
the Board of Trustees so to declare, "and thereupon the
*estate* granted and the *conveyance* were to cease, determine
and be void, and the *said* land and *property* (that before de-
scribed and conveyed) was to *revert* to and *revest* in the plain-
tiff as of his former estate." The object of the conveyance
did fail, and the defendants, constituting the Board of Trus-
tees, by their deed in due form so declared, and that in con-
sequence, the granted land had reverted and revested accord-

ing to the conditions of the trust deed, and. by the same deed they did "grant, remise, release and confirm unto the said Horace Hawes, the land and premises thereinbefore described, *and to them conveyed in trust* as aforesaid," the deed of trust being therein previously recited.

So the same *land* and *property* that was conveyed, reverted, revested, and was re-conveyed. It is unnecessary to suggest that all that was added or attached to the land in the meantime, was as much a part of the same land as if it had been added at any prior period.

All that has been said under this head about what is included in the land, and in the conveyance, reversion and re-conveyance, and the equitable substitution of the money for the land or buildings converted into money by voluntary sale or by destruction, would be true, even if the defendants had insured without reference to the fiduciary character. The money is a *compensation* for the property destroyed, as much as if it had been a sale, and it makes no difference whether the disposition was voluntary or *forced*. It makes no difference whether the property be burned or destroyed and paid for by a wilful trespasser, or destroyed by *accidental* conflagration and paid for by underwriters, who, for a *consideration*, have become bound for a loss which a trespasser or party otherwise in fault would have to pay, even without such agreement. In equity, the money stands in place of the land, and if the land reverts, so does the money.

RHODES, J., delivered the opinion of the Court:

The plaintiff conveyed to the defendants, as trustees, a tract of land with a building thereon, for the purpose of establishing and maintaining a school. The defendants made an addition to the building and caused the whole to be insured for two thousand dollars. The building was destroyed by fire and the loss was paid to the trustees. There was a provision in the trust deed, to the effect that if the design to establish and maintain a school should prove unsuccessful, the trustees, by resolution, should so declare,

and thereupon the title to the property should revert to the plaintiff. After the fire the trustees did so declare, and also re-conveyed the premises to the plaintiff. The question presented is, whether the money paid to the defendants (the trustees) became, in equity, the property of the plaintiff upon the re-conveyance of the premises by the trustees.

The addition to the house, which was erected by the trustees, was not personal property, but it became, like the house, to which it was attached, a part of the realty. The strictness of the earlier rule, requiring the structure to be attached to the soil, in order to become a fixture, is being relaxed in this country, in consequence of the manner in which very many buildings, that are intended to be permanent, are erected. But the addition was, in this case, attached to the main building in such a manner that it constituted a part of the main building. The trustees, therefore, held the "addition" by the same tenure that they held the lot and the main building; and had the property reverted to the plaintiff before the fire, the "addition" would have passed to him with the lot, without any special words of conveyance. The insurance of the building covered the "addition" as well as the main building, and, if the plaintiff is entitled to any part of the fund paid by the insurer on account of the loss, he is entitled to the whole.

The trustees held the fund in their fiduciary, and not in their private capacity. The persons to whom they paid the larger part of the money had made donations to the trustees for the benefit of the school, but without any conditions, and they had neither a legal nor equitable claim to the fund. Nor did any claim exist in favor of the persons to whom portions of the fund were paid on account of a loss of furniture sustained by one, or a personal injury sustained by the other. Upon the passage of the resolution referred to, the title to the real estate reverted to the plaintiff, and the trustees had no further duties to perform in maintaining the school; and, clearly, it would be unnecessary, and not within the scope of their duties, to expend any further sum of money for that purpose. The duties of the defendants, as

trustees, having terminated upon the adoption of the resolution, it became their duty to pay over to the person entitled to it, the insurance money in their hands. It is not and could not be claimed that the defendants are entitled to it; it could not be claimed on behalf of the school, for that no longer existed; and we are unable to see how any one, except the plaintiff, can make out a plausible claim to it. Had the building, with the addition, remained upon the lot at the time of the adoption of the resolution, it would have vested in the plaintiff; and had the trustees expended the insurance money in rebuilding, before the adoption of the resolution, the new building would have reverted to the plaintiff with the lot; and it would seem just and equitable that the plaintiff should be entitled to the insurance money remaining in the hands of the trustees when the design for the school failed. It represented, in their hands, the insured building. Had the deed made it the duty of the trustees to keep the building insured, and, in case of a loss, to appropriate the insurance money to the erection of another building, there would be no difficulty in holding that, as between the parties to the deed, the money would, in equity, be treated as land. The trustees did not exceed their duty in effecting the insurance, and it would have been their duty, had not the project for the maintenance of the school failed, to have rebuilt; but they, not having rebuilt, and having determined that it was impracticable to maintain the school, the money stands in the stead of the building, and, in equity, vested in the plaintiff, upon the termination of the trust, in the same manner as would the building, had they expended the money in the erection of a building.

The plaintiff has not waived his claim to the money by the acceptance of the deed from the trustees with knowledge of the insurance, the loss and the payment of the insurance money. That instrument, considered as a conveyance, had no effect upon the title, but the operative portion of the instrument was the resolution of the trustees that the design to maintain a school had proved unsuccessful, for, upon the adoption of the resolution the trust deed became void, and the title reverted to the plaintiff. Until the resolution was

adopted (and there is no evidence of its adoption, except that afforded by the deed) the plaintiff was entitled neither to the land nor the money.

Judgment affirmed.