JAMES SAMPSON *et ux. vs.* SYLVESTER GROGAN, Executor.

WASHINGTON—FEBRUARY 6, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Conditional Devise. Duty of Life Tenant.*

A life tenant is bound to the exercise of due care of an estate, the fee of which is in another; if a building thereon be destroyed by fire through the negligence of the tenant, or of his servants, he is responsible; but he is not liable for damages caused by an accident where he is entirely free from fault.

(2) *Obligations Imposed by Law and Assumed by Contract.*

One may be excused from performing a duty imposed upon him by law, if disabled from performing it without fault of his own and he have no remedy over; but if, by his contract, he creates a duty or charge upon himself, he is bound to make it good notwithstanding accident or necessity which he might have provided against in the contract.

An express and unqualified covenant by a lessee to repair the leased premises binds him to the rebuilding of structures thereon that may be destroyed by fire or accident.

When a devisee or legatee accepts the gift of a testator he thereby obligates himself to perform the conditions that may be attached to the devise or bequest.

(3) *Permissive Waste.    English and R. I. Statutes Relating to Waste.*

The doctrine of permissive waste does not, in this State, extend so far as to hold a life tenant responsible for damages occasioned by accidental fire.

A devise of a house and lot of land to a devisee for life contained a provision that the life tenant "keep the same in repair;" she accepted the devise, and afterwards the house was destroyed by accidental fire; in an action against her estate by the remainder-man for the value of the building:—

*Held*, that the quoted language simply required the devisee to take such care of the devised estate as a prudent and diligent person would take of his own absolute property, and that she was not under obligation to rebuild the house.

(4) *Use of Insurance Money.*

If, in such case, the life tenant receive payment of the insurance on the building, she is entitled to retain the money unless it appear that the policy covered more than her interest in the destroyed property.

ASSUMPSIT for the value of a dwelling-house destroyed by accidental fire during the life tenancy of the defendant's testatrix. Certified from the Common Pleas Division, and heard on demurrer to the declaration.

TILLINGHAST, J.    This is an action of assumpsit, and is brought to recover the sum of three thousand dollars, alleged to be the value of a dwelling-house which was destroyed by fire during the time it was held by the defendant's testatrix, as life tenant thereof under the will of Bernard O'Connell. The devise in said will to defendant's testatrix is as follows :

"Second.    I give and devise to my affectionate and beloved wife Margaret O'Connell my house and lot in the village of Wickford in the town of North Kingstown with all the privileges and appurtenances thereto belonging for and during her natural life, she to keep the same in repair ; at her decease, I give and devise said house and lot to my niece Julia O'Connell to her, her heirs and assigns forever."

The declaration alleges that, immediately upon the death of said Bernard O'Connell, the said Margaret O'Connell, afterwards Margaret Grogan, elected and decided to accept said

devise, and entered into possession of said real estate and a house then thereon standing of the value of $2,000, and thereby assumed upon herself the obligation to keep said house in repair, and so promised and agreed to keep said house in repair during her tenancy, to wit, during the continuance of her natural life. It then avers that, while thus in possession of the premises, the house situated thereon was wholly destroyed by fire, and that it was the duty of said Margaret Grogan, under the terms of said devise and of her promise made upon accepting the same, to rebuild said house, which she failed to do, notwithstanding the fact that she received the insurance money for the insurance which was upon said house when it was burned, whereby the plaintiff Julia Sampson, being the owner of the estate in remainder created by said devise, was damaged in the sum of $3,000, and has become entitled to have and recover the same of the defendant executor. Sylvester Grogan having deceased since the commencement of this action, John H. Bagley, his administrator, has assumed the defence thereof.

The defendant demurs to the declaration, on the ground that, as a matter of law, it was not the duty of said Margaret Grogan, under the terms of said devise, to rebuild said house.

We agree with the plaintiff's counsel that the action cannot be regarded as an action of waste or for damages under the statute (Gen. Laws R. I. cap. 268, § 1), but that it is based entirely upon the agreement of the life tenant to repair, created by the devise and the life tenant's acceptance thereof. So that the case turns upon the legal effect to be given to the language of said devise. But while this is so, yet as the plaintiff's counsel, both in his elaborate brief and also at the bar, has carefully discussed the law of waste, and as the principles thereof are closely related to the main question involved, we will consider it.

The plaintiff's counsel argues that, even conceding that an action for waste under the statute (Gen. Laws R. I. cap. 268) cannot be maintained, because the injury to the disherison was caused by accidental fire, yet that the life tenant is liable for all waste. That the statute of this State is like the

English Statute of Marlbridge in defining the liability, and like that of Gloucester in declaring a forfeiture and giving a double penalty,

By the ancient common law, not only might he that was seized of an estate of inheritance do as he pleased with it, but also waste was not punishable in any tenant save only in three persons, namely, guardian in chivalry, tenant in dower, and tenant by the curtesy ; and not in tenant for life or years.  4 Coke's Inst. 299.  The reason of the diversity, as stated by Blackstone, was that the estate of the first three above named was created by the act of the law itself, which, therefore, gave a remedy against them ; but tenant for life or for years came in by the demise and lease of the owner of the fee, and therefore he might have provided against the committing of waste by his lessee ; and if he did not, it was his own fault.  Cool. Black. Book 2, p. 282 ; Tiedeman on Real Prop. § 72 ; 4 Kent. 12 ed. * 80 ; *Countess of Shrewsbury's Case*, 5 Co. 13.  Subsequently, in favor of the owners of the inheritance, the statute 52 Hen. 3, c. 23, known as the Statute of Marlbridge, was passed in A. D. 1267, § 2 of which provides as follows :  "Also fermors, during their terms shall not make waste, sale nor exile of house, woods, and men, nor of anything belonging to the tenements that they have to ferm, without special license had by writing of covenant, making mention that they may do it ; which thing, if they do, and thereof be convict, they shall yield full damage and shall be punished by amerciament grievously."  Under this statute the disability of committing waste was made an ordinary and general incident to all kinds of estates for life and for years (Tiedeman, *supra*), and the actual damages sustained by the reversioner were recovered in an action of waste.  1 Wash. Real Prop. 5 ed. 158.  Under the common law, as thus modified by the Statute of Marlbridge, only single damages were recoverable by way of punishment for waste, except in the case of a guardian, who also forfeited his wardship by virtue of the great charter.  See Stat. 9 Hen. 3, c. 4 ; 1 Black. *supra*, 283.

Thus the law remained until the passage of the statute

of 6 Edw. 1, c. 5, in A. D. 1278, known as the Statute of Gloucester, which provides : "That a man from henceforth shall have a writ of waste in the Chancery against him that holdeth by law of England, or otherwise for term of life or for term of years, or a woman in dower ; and he which shall be attained of waste shall lose the thing that he hath wasted, and moreover shall recompense thrice so much as the waste shall be taxed at." Our statute of waste above referred to is based upon the one last quoted. Under the law as it stood after the passage of the Statute of Gloucester, not only tenants by the curtesy and in dower were held responsible for accidental fires at the common law, but tenants for life and years, created by the act of the parties, were also held responsible therefor as for *permissive waste*, under the last named statute. 4 Kent, *supra*, § 82. Under the language of this statute that "*he shall lose the thing that he hath wasted*," "it hath been determined," says Blackstone, "that the place is included. That if the waste be done *sparsim*, or here and there all over a wood, the whole wood shall be recovered, or if in several rooms of a house, the whole house shall be forfeited ; because it is impracticable for the reversioner to enjoy only the identical places wasted, when lying interspersed with the other." It was waste under said statute to pull down a house or to suffer it to decay. If it was uncovered or ruinous at the commencement of the term and the tenant suffered it to become more so ; if he suffered the house to be burned by neglect or mischance ; if it was uncovered by tempest and he suffered it afterwards to decay, or even if glass or windows were broken, he was liable for waste. In short, it seems that the only exception to the liability of the tenant for damages to the reversion was where the damage was caused by the acts of God and public enemies, and the acts of the reversioner himself. See Woodf. L. & T. 461 *et seq.;* 4 Co. 536.

"It is common learning," said Heath, J., in *Attersoll* v. *Stevens*, 1 Taunt. 198, "that every lessee of land, whether for life or years, is liable in an action of waste to his lessor for all waste done on the land in lease, by whomsoever it may

be committed." Chambre, J., in the same case, p. 196, said : "The situation of the tenant is extremely analogous to that of a common carrier. To prevent collusion (and not on the presumption of actual collusion) both are charged with the protection of the property intrusted to them against all but the acts of God and the king's enemies ; and as the tenant in the one case is charged with the actual commission of the waste done by others, so, in the other case, the carrier is charged with actual default and negligence, though he loses the goods by a force that was irresistible, or by fraud, against which no ordinary degree of care and caution could have protected him." Lord Coke is not less explicit, for he says : "Tenant by the curtesy, tenant in dower, tenant for life, years, &c., shall answer for the waste done by a stranger, and shall take their remedy over." 1 Inst. 54 a ; see also 2 id. 145, 303 ; 4 Kent's Com. 77 ; 1 Inst. 57 a note 377 ; 3 Black. Com. 228 ; Comyn's Land. & Ten. 188 ; Prof. Gray's Select Cases on the Law of Property, Vol. 1, 560.

The law of waste, as thus briefly outlined, continued in force in England until the passage of the Statute of 6 Anne, c. 31, in A. D. 1707, which guarded the tenant from the consequences of accidental misfortune in case of fire, by declaring that no suit should be had or maintained against any person in whose house or chamber any fire should accidentally begin, nor any recompense be made by such person for any damage suffered or occasioned thereby. Statutes at Large, 10 Will. 3, Queen Anne, Vol. 4, 314. This statute was afterwards enlarged by the Statute of 14 Geo. 3 c. 78, § 86, passed in 1774, so as to include stables, barns, or any other buildings on the estate. Statutes at Large (7 Geo. 3—18 Geo. 3), Vol. 8, 397. Speaking of the Statute of 6 Anne, Chancellor Kent says : "Until this statute, tenants by the curtesy and in dower were responsible, at common law, for accidental fires ; and tenants for life and years, created by the act of the parties, were responsible, also, under the statute of Gloucester, as for permissive waste." 4 Kent's Com. 82.

As to the question whether the action for permissive waste

lies against a tenant for years, most of the authorities are collected in the notes to *Greene* v. *Cole*, 2 Saund. 252, where it is stated as clear law that, at common law, the action only lay against tenant by the curtesy, tenant in dower, or guardian, but that by the Statute of Gloucester, 6 Ed. 1, c. 5, the action is given against lessee for life or years, or tenant *pur auter vie*, or against the assignee or tenant for life or years for waste done after the assignment. *Harnett* v. *Maitland*, 16 M. & W. 261.

The first practical question raised by the argument of plaintiff's counsel, as aforesaid, is whether the law of waste as it existed in England after the passage of the Statute of Gloucester, and before the passage of the Stat. 6 of Anne (for the latter statute has never been in force in this State), is so far binding in this State as to hold a life tenant responsible for an accidental fire. We do not think the doctrine of permissive waste has ever been understood to extend so far as to include damages thus occasioned. The rule was adopted in England in very early times, and was then adapted to the doctrine which there prevailed regarding the almost sacred rights of land-owners under feudal tenures which had not then been abolished, and were not until the Stat. 12 Car. 2, c. 24, passed in A. D. 1670. But even in England, with all the inherited tendencies of the governing classes in favor of the feudal system, and the superior rights of the landed aristocracy, the law evidently came to be considered too rigid, as it was finally repealed, so far as the liability for accidental fires was concerned, by the aforesaid Statute of Anne. It is true that the Statute of Gloucester is one of the English statutes which was found to be in force in this State by the committee appointed by the General Assembly in October, 1748, to prepare a bill " for introducing into this Colony such statutes of England as are agreeable to the constitution " (5 R. I. Colonial Rec. 289 ; Acts and Laws of His Majesty's Colony of Rhode Island, 1745 to 1752, p. 70), and, as modified by our statute of waste, it is probably still in force. But we think it has never been considered that under our statute, which practically supersedes the Statute of Gloucester,

a tenant for life or for years could be compelled to rebuild premises destroyed by accidental fire. See Dane's Abridgement, Vol. 3, 228–9 ; *Parker* v. *Chambliss,* 12 Ga. 235.

Speaking of permissive waste, Chancellor Kent says : "There does not appear to have been any question raised, and judicially decided in this country, respecting the tenant's responsibility for accidental fires, as coming under the head of this species of waste. I am not aware that the Statute of Anne has, except in one instance, been formally adopted in any of the States." (It has since been adopted in Wisconsin, and also in New York in regard to fires in woods and fallow land. See 1 Wash. *supra,* 156–7 and notes.) "It was intimated, upon the argument in the case of *White* v. *Wagner* (*post.*), that the question had not been decided ; and conflicting suggestions were made by counsel. Perhaps the universal silence in our courts upon the subject of any such responsibility of the tenant for accidental fires, is presumptive evidence that the doctrine of permissive waste has never been introduced and carried to that extent in the common law jurisprudence of the United States." Mr. Kerr, in his late work on Real Property, under the head of "Permissive Waste," says : "The tenant for life is answerable if the houses or other buildings on the premises are destroyed by fire from the negligence or carelessness of himself or his servants ; and he must rebuild within a convenient time at his own expense. The life tenant is not liable, however, if the fire is the result of an accident, and he and his servants are free from fault." See also Hopkins on Real Prop., Hornbook Series, 62–3 and cases cited. Mr. Washburn, in his work on Real Property (5 ed. 157), states the law to be that if the fire occurs without the fault of the tenant, he would not be responsible.

Such seems to be the well-settled, if not, indeed, the unquestioned law in this country as to permissive waste. And it is certainly entirely consistent with right and reason. If a building is destroyed by fire through the carelessness or negligence of the tenant, or of his servants, which is the same thing, he is, and ought to be, responsible in damages there-

for; for he is bound to the exercise of due care and diligence in the use of property the fee of which is in another. But he is not, and cannot in reason be held liable for damages caused by an accident, where he is entirely free from fault. See *Fay* v. *Brewer*, 3 Pick. 203 ; *Barnard* v. *Poor*, 21 Pick. 378 ; *Scott's Ex'x* v. *Scott*, 18 Gratt. at p. 165 ; *Clark* v. *Foot*, 8 Johns. 329 ; *Wade* v. *Malloy*, 16 Hun. 226 ; *Maull* v. *Wilson*, 2 Harr. 443 ; *Cornish* v. *Strutton*, 8 B. Mon. 586.

In *White* v. *McCann*, 1 Ir. C. L. 217, Blackburne, C. J., says : "There is no authority or position that the accidental destruction of premises amounts to permissive waste, or to a *tort* on the part of a tenant."

In *United States* v. *Bostwick*, 94 U. S. 53, it was held that, in the absence of an *express* covenant to repair, a tenant is not answerable for accidental damages, nor is he bound to rebuild if the buildings are accidentally destroyed by fire or otherwise.

The case of *Clemence* v. *Steere*, 1 R. I. 272, cited by plaintiff's counsel in support of his position, is in harmony with this doctrine. The language quoted from the opinion : "If the house was torn down after she left the premises, and neither by her direction or permission, she is responsible," although only a *dictum*, and used by way of illustration in charging the jury, implies that in case the tenant *negligently* leaves or abandons the premises, and the house is torn down by a stranger, the tenant is liable.

In the case of *White* v. *Wagner*, 4 H. & J. (Md.) 373, cited by plaintiff's counsel, the court held that a lessee was responsible where the house was destroyed by a mob, on the ground that as the lessee "*did of his own authority, without the consent of the plaintiff*, divert the house to a totally different and much more dangerous purpose, well aware of the risk which the property would thereby have to encounter, on principles of law and justice, as between himself and the plaintiff he becomes responsible." It will at once be seen that the decision of that case was based upon the misconduct of the tenant in diverting the house to an improper and unauthorized use, and, therefore, that it is not an authority in

support of the broad doctrine contended for by the plaintiff's counsel.    Indeed, it is fair to infer, from certain language used by the court, that if the defendant had continued to use the house for the purposes for which it was left, and it had been destroyed by a mob, the defendant would not have been held liable.    Moreover, the decision, even on the ground upon which it was put, was by a divided court.

Finally, then, as to the plaintiff's contention aforesaid regarding the liability of the life tenant simply as such, without reference to the language of the devise in question, we are of opinion that it is untenable.

(2)    We now come to the plaintiff's main contention, which is that the acceptance of the devise by the life tenant imposed upon her the liability to repair to the same extent as though she had accepted a lease of the premises containing an absolute covenant to repair.    The defendant's contention, on the contrary, is that the language of the devise relied on by plaintiff adds nothing to the obligation of the life tenant to keep up the estate and commit no waste, and that the only promise that can properly be implied is the promise which is to be implied on the part of every life tenant, namely, that no waste shall be committed.    This he concedes was clearly the duty of the life tenant, being made so by Gen. Laws R. I. cap. 268, wherein the method of recovery for such violation is prescribed to be an action of waste.

The position taken by plaintiff's counsel that, where in a lease there is an express and unqualified covenant on the part of the tenant to repair the premises, he is bound to do so even though they be destroyed by fire or accident, seems to be well supported by authority.    Tay. L. & T. 8 ed. § 357, and cases cited ; Sm. L. & T. Amer. Notes, 258–9 ; *Phillips* v. *Stevens*, 16 Mass. 238 ; *Tilden* v. *Tilden*, 13 Gray, 109 ; *Cook* v. *Transportation Co.*, 1 Denio, 91 ; *Scott's Ex.* v. *Scott*, 18 Gratt. 165 ; *Abby* v. *Billups*, 35 Miss. 631 ; *David* v. *Ryan*, 47 Ia. 642 ; *McIntosh* v. *Lown*, 49 Barb. 550 ; *Hoy* v. *Holt*, 91 Pa. St. 88.    These cases seem to proceed upon the principle that, although a man may be excused from a duty imposed upon him by law, if he is disabled from per-

forming it without any fault of his own, and he has no remedy over, yet when by his own contract he creates a duty or charge upon himself he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it in the contract. See note to *Walton* v. *Waterhouse*, 2 Saund. Rep. 422. It is doubtless competent for a man to assume whatever liability he may see fit in connection with the occupancy of real estate. He may agree absolutely to deliver the possession of the premises to the owner at the end of the term in like good condition in every respect as they were at the date of the lease ; or he may agree to pay rent for the entire term without providing for any abatement or exception in case the premises are rendered untenantable by fire or other casualty, and thereby bind himself to fulfill the covenant to the letter. And if the bargain turns out to be a hard one for him he has no legal ground of complaint, for it was his own free and voluntary act. He might have limited his liability to pay rent only so long as the premises were tenantable, or have made an exception in case they were destroyed by fire or other unavoidable casualty, as is almost always done. But if he does not, his liability is absolute. Now whether this principle is to be extended by analogy to include a case where there was no express covenant or agreement to repair, but only an implied agreement, growing out of the acceptance of a devise, is the question which we are called upon to decide.

(3)  Counsel for plaintiff has cited numerous authorities to the effect that where a devisee or legatee accepts the gift of the testator he thereby obligates himself to perform the condition attached to the devise or bequest. That such is the law there can be no doubt. A testator may attach such conditions to his gift as he sees fit, and he who accepts it must also accept and assume the burdens attached thereto, as in this way only can the intention of the testator be accomplished. This doctrine has been carried to the extent of holding the devisee personally liable, without any express promise, for all the debts of the testator, in a case where all of the real and personal estate was given to the donee, he to

pay said debts. *Gridley* v. *Gridley*, 24 N. Y. 130. See also *Messenger* v. *Andraus*, 4 Russell's Rep. 478 ; *Wheeler* v. *Lester*, 1 Brad. 293 ; *Ditch* v. *Sennott*, 117 Ill. 362 ; *Woonsocket Inst. for Savings* v. *Ballou*, 16 R. I. 351. But these and similar cases, in so holding, only go to the extent of saying, in effect, that the intent of the testator in making the gift, with the condition or burden attached, must be carried out by the donee or devisee who accepts it. *Veazey* v. *Whitehouse*, 10 N. H. 409. In the case at bar, the duty which the testator devolved upon the life tenant was to keep the premises in repair, and this duty was assumed by her in accepting the devise. Now what is the natural and ordinary meaning and import of the language used by the testator— "*she to keep the same in repair*," that is, what would ordinarily be understood by the use of that language when used in a will in connection with a devise of real estate ? Simply this, we think : that the devisee is to take such care of the estate as a prudent and diligent person would take of his own absolute property ; that is, such care as good husbandry may require, which would, of course, include proper repairs. And in accepting the devise the life tenant impliedly promised to exercise that degree of care and prudence in the management and use thereof. But to take the language aforesaid out of its setting, and give it the force and effect which it would have when used in an absolute and unqualified covenant to repair by the tenant in a lease, would be to give it an artificial and technical meaning never contemplated by the devisor, and to impose a burden which the life tenant never supposed or had any reason to suppose she was assuming by accepting the devise. The brief of plaintiff's counsel shows that he has been very diligent in examining the law pertaining to the duties and obligations of life tenants, covering a period of two centuries and more, but he cites no authority which goes to the extent of holding, generally, that the mere acceptance by a life tenant of a devise of real estate, containing a direction to keep in repair, imposes upon him the duty to rebuild in case the buildings upon the land are accidentally destroyed by fire. And as a devise like the one in

question is, and always has been, very common in wills, and, moreover, as life tenants would seldom voluntarily assume the burden of rebuilding premises destroyed by fire or other accident, unless the same would be for their benefit, or unless compelled by law to do so, the very fact that no case can be found in this country where the court has declared that the duty to rebuild is the same as that devolved upon a tenant by his unqualified covenant to repair when incorporated in a lease, is pretty good evidence that such has never been considered to be the law. The case cited by plaintiff's counsel which comes nearest to supporting the doctrine contended for is the English case of *In re Skingley*, 3 Macnaghten & Gor. 221. That was a case where, after the dwelling-house was destroyed by fire, the chancellor, upon the petition of the remainder-man, ordered the guardian of the life tenant, who was a lunatic, to rebuild the house. That is, he was to use so much of the lunatic's estate, over and above the amount received for insurance on the building, as was necessary to rebuild the house. It appears, however, that the petition was supported by certain of the next of kin of the lunatic himself, on the ground that it would be for his interest to rebuild, rather than to incur the risk of the absolute forfeiture of the premises under the law of waste. It is fairly to be inferred from the case, taken as a whole, that it was considered to be for the best interest of the lunatic that his estate should defray so much of the expense of rebuilding as represented the difference between the insurance and the cost of rebuilding. Moreover, it was a proceeding in chancery, and not an action at law. We do not think, therefore, that it is decisive of the question before us.

We therefore decide that said Margaret Grogan was not under obligation to rebuild the house which was destroyed by fire, by virtue of the provision contained in the devise aforesaid.

(4) But the plaintiff further contends that, apart from the life tenant's agreement to repair, a sound public policy would require that the money received by a life tenant, on account of a loss by fire, should be used in rebuilding, and, if not so

used, then should be paid over to the remainder-man. If a policy is issued to a life tenant for the full value of the fee, and this amount is recovered by him, he certainly ought to be held to be a trustee for the remainder-man as to the excess of the amount received over the value of his life interest. *Welsh* v. *London Assurance Corp.*, 151 Pa. St. 607. See also *Brough* v. *Higgins*, 2 Gratt. 409, and *Graham* v. *Roberts*, 8 Ired. Eq. 99. In the case at bar, however, the declaration does not allege that the policy covered anything more than the life tenant's interest in the building which was destroyed by fire, and if it did not she was clearly entitled to such insurance in full.

Demurrer sustained.

*Charles E. Gorman and James T. Eagan,* for plaintiff.
*Samuel W. K. Allen,* for defendant.