## NEW ORLEANS & SOUTH AMERICAN S. S. CO. v. W. R. GRACE & CO.

Circuit Court of Appeals, Second Circuit.
June 11, 1928.

No. 316.

1. **Insurance** ⊜582—**Shipper, sued for freight due regardless of loss, held not entitled to set off insurance for whom it may concern.**

Where ocean carrier insured its freight charges under policy written "on account of whom it may concern," *held*, shipper liable under bill of lading for freight charges regardless of loss of shipment, was not entitled, in an action for such charges, to set off the benefit of insurance collected by the carrier; the carrier being liable to insurer for amount of charges collected under its contract.

2. **Insurance** ⊜115(8)—**Carrier, entitled to freight charges regardless of loss of shipment, has no insurable interest therein.**

Where freight is payable to ocean carrier notwithstanding loss of shipment, carrier has no insurable interest in its charges.

3. **Insurance** ⊜156(4)—**Policy "on account of whom it may concern" need not be taken out with any particular person in mind.**

Where a policy of insurance is taken out "on account of whom it may concern," it is not necessary that the person who secures it should have any specific individual in mind, so long as he intends to cover some person who might have an insurable interest.

4. **Insurance** ⊜155—**Statements by person taking out policy "on account of whom it may concern" as to person whom he had in mind are inadmissible.**

Where policy is taken out "on account of whom it may concern," it is not permissible to receive statements from the person obtaining such policy as to the person whom he had in mind.

5. **Insurance** ⊜582—**Person not within contemplation of persons affecting policy "on account of whom it may concern" cannot recover.**

Where language of policy taken out "on account of whom it may concern," when read in the light of existing circumstances, shows that the person claiming the benefit was not such a person as those effecting the policy had in contemplation, his claim will be disallowed, though he might be within the description.

6. **Insurance** ⊜159—**Insurance on "unpaid and/or collect freight" does not cover obligation to pay freight.**

A policy covering "unpaid and/or collect freight" does not cover the obligation to pay freight, unless the terms of the policy clearly show intention to insure risk of loss of interest in cargo representing additional value measured by amount of freight.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the New Orleans & South American Steamship Company against W. R. Grace & Co. Decree for libelant, and respondent appeals. Affirmed.

Bigham, Englar & Jones, of New York City (D. Roger Englar and Ezra G. Benedict Fox, both of New York City, of counsel), for appellant.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for appellee.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This suit was brought to recover freight. In 1919, the respondent shipped from Haiti, on board the vessel Santa Cristina, owned by the libelant, certain cargo consigned to the respondent in New Orleans. The agreed freight for the carriage was $14,100.81. For the cargo so shipped the libelant issued to the shipper bills of lading which contained the clause:

"Full freight to destination, whether intended to be prepaid or collected at destination, and all advance charges against the goods, are due and payable to the New Orleans & South American Steamship Company 'upon receipt of the goods by the latter, and the same * * * shall be deemed fully earned and due and payable to the carrier at any stage, before or after loading, of the service hereunder, without deduction (if unpaid) or refund in whole or in part (if. paid), goods or vessel lost or not lost, or if the voyage be broken up, and the same shall be payable in United States currency or in New York funds."

On the voyage, the Santa Cristina was destroyed by fire and the vessel and cargo were thereby totally lost. The freight money in regard to the shipments so destroyed had not been prepaid by the shipper. When demand was subsequently made to W. R. Grace & Co.

(the consignee and respondent herein), payment was declined for the reasons appearing below.

Prior to the date of loading of most of the shipments, the libelant, through A. R. Williams, its vice president and general manager, verbally applied to the brokerage concern of Wilcox, Peck & Hughes for insurance in amount of $16,000 on the freight to be earned on these shipments on the Santa Cristina. The insurance was effected by four different underwriters under similar insurance documents. Those issued by the Western Assurance Company, one of the underwriters, will serve as an example.

Under date of June 30, 1919, the Western Assurance Company, through its agents, the Maritime Underwriting Agency, issued a certificate of insurance as follows:

"This is to certify that on the 26th day of June, 1919, we, the undersigned, insured under policy 16/750 for New Orleans & South American Steamship Company, and/or as agents, the sum of five thousand dollars on unpaid and/or collect freight valued at $16,000, or actual amount collectible, if more on board S. S. Santa Cristina, at and from Curacao via port or ports in any order or rotation to New Orleans and for five days after arrival. Loss, if any, payable upon surrender of this certificate to the order of assured.  *  *  *

"It is understood and agreed that this certificate represents and takes the place of the policy, and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claim), as fully as if the property were covered by a special policy direct to the holder of this certificate, and free from any liability for unpaid premiums.  *  *  *

"It is agreed that, upon the payment of any loss or damage, the insurers are to be subrogated, to the extent of such payments, to all the rights of the assured under their bills of lading or other contracts of carriage.  *  *  *

"Not valid unless countersigned by

"Maritime Underwriting Agency, Inc.,
            "General Agent.
"Countersigned:
    "Maritime Underwriting Agency, Inc.,
        "Frank L. Greene.
    "W. B. Meikle, President.
    "C. F. Wainwright, Secretary."

The original policy 16/750 under which the certificate was issued was dated March 15, 1916, was taken out in the name of Whist & Co., Inc., then agents of the Western Assurance Company, and provided:

"To Whist & Company, Inc., on Account of Whom It may Concern:

"In case of loss to be paid to them or order, does make insurance, and cause them to be insured, at and from any ports and places in the world to any ports and places in the world, as may be hereafter agreed. On any description of cargo, under and/or on deck, as may be accepted by the agents of the company at the time of declaration. Laden or to be laden on board the good steamers, sailing vessels, railroads, and/or any conveyances, as agreed."

The policy went on to state the risks insured against which were perils of the sea, and provided that other insurance of the same date as the policy should be deemed simultaneous therewith and the insurers should be liable only for a ratable contribution in the proportion of the sum by it insured to the aggregate of such simultaneous insurance. The policy also provided that if the assured accepted payment for loss under the policy all their right to claim for such loss against any person should inure to the extent paid by the insurer to it.

To policy 16/750 was attached a rider, dated February 1, 1919, providing that "the interest of this policy or certificate is now vested in the name of 'Maritime Underwriting Agency, Inc.,' loss, if any payable to 'interests as may be agreed upon,' instead of as originally written. All other terms and conditions remaining unchanged."

It appears from the foregoing that it was the practice of these companies to issue a general policy to Whist & Co., Inc., who were then succeeded as agents by the Maritime Underwriting Agency, Inc., and that this document authorized Whist & Co., Inc., or their successors, Maritime Underwriting Agency, Inc., to issue certificates of insurance to any person it was desired to insure. The certificate of June 30, 1919, issued to New Orleans & South American Steamship Company and/or as agents, on unpaid and/or collect freight on board steamship Santa Cristina, specifies the relative rights of the underwriters and beneficiaries of the policy.

The libelant paid the premium for the foregoing certificate of insurance. The respondent had also insured its cargo on the voyage in question on an agreed valuation which included the invoice value plus the freight.

Following the loss of vessel and cargo, the libelant's underwriters advanced to the libelant under loan receipts the amount of freight, taking from it a written agreement to press its claim against the shippers, consignees and/or owners of the cargo for the

freight due from the cargo. These receipts read:

"Being an advance to cover loss of freight pending recovery thereof, if any, from the shippers, consignees or owners of cargo on S. S. Santa Cristina, by disaster of 7/8/19."

And the libelant in the receipts agreed with its underwriters that in consideration of their advances to cover loss of freight on cargo on board the vessel it would put forward a claim therefor against the shippers, consignees, and/or owners of the cargo and, on receiving payment from them, would undertake to refund the same.

This suit was brought in accordance with the foregoing agreement with the underwriters and really is prosecuted by the libelant in their behalf.

[1] The respondent does not dispute its liability under the bills of lading, but claims the right to set off against this liability the benefit of insurance collected by the libelant, asserting that its loss to the extent of the freights for which it became liable was covered by this insurance. It takes the position that as the original policy was "on account of whom it may concern," and as the libelant had no freight at risk because the freight was payable in any event, the insurance was for respondent's sole benefit.

In order to avoid the detail of bringing in the four underwriters, who insured the libelant, under the fifty-sixth rule in admiralty, a stipulation of facts was entered into between the libelant and the respondent to the effect that the action should proceed as if the insurance companies were parties and, if the court's judgment should be that the respondent was covered by and entitled to the benefits of the policies and certificates taken out by the libelant, then a decree should be made for the respondent.

Judge Thacher, before whom the case was tried, held that the contract did not insure the shipper against any loss, but only covered the owner's risk of loss which might be due to an inability to collect "unpaid and/or collect freight" arising from the perils insured against; that there was no relation of agency between the libelant and the shipper, and that, although the insurance was obviously unnecessary in the case of freights payable upon receipt of goods, "goods or vessel lost or not lost," that circumstance could not give rise to a contract which by its terms precludes the claim that it was written for the benefit of a shipper of cargo.

[2] There is no reason for resorting to anything outside of the documents, except to show who was covered by the certificates when they were issued to the libelant "and/or

as agents." While the stock of the steamship company was owned by W. R. Grace & Co., there is nothing in the situation accompanying the issue of the certificates to indicate that Williams, who was the vice president of the libelant and ordered the insurance, was acting as agent for the respondent or had it in mind. What he might say about whom he had in mind need not be considered, but the reasons for taking out the insurance do have a bearing. He did not know that the bills of lading which would be finally issued would provide that the freight should be due, vessel lost or not lost. Consequently there was the chance that the freight might be at risk, in which event there would have been an insurable interest. As it turned out, libelant had no insurable interest, for, where freight is payable in any event, the shipowner has no insurable interest in such freight against perils of the sea. Mansfield v. Maitland, 4 B. & Ald. 582; Allison v. Bristol Marine Ins. Co., 1 App. Cas. at page 220; Minturn v. Warren Ins. Co., 2 Allen (84 Mass.) 86.

It is true that if the respondent, or the libelant on its behalf, had specifically insured against the risk through perils of the sea of its liability to pay freight, the insurance might have inured to its benefit. Williams v. Canton Ins. Office [1901] A. C. at page 472. The facts in Sansom v. Ball, 4 Dall. 459, 1 L. Ed. 908, resembled such a situation. It must be clear, however, that the insurance was to cover a risk of this unusual kind, and the evidence here points to the contrary.

Where insurance is specifically taken out on what is sometimes called "contingency freight," it is really not on freight, but, as Arnould says in his book on Marine Insurance (11th Ed.) § 232, is "on an interest in the goods akin to an insurance on profits."

[3-5] It is perfectly true that, where a policy of insurance is taken out "on account of whom it may concern," it is not necessary that the person who secures it should have any specific individual in mind, so long as he intends to cover some person who might have an insurable interest. Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 S. Ct. 862, 46 L. Ed. 1229. Nor is it permissible to receive statements from him as to the person whom he had in mind. But when the language of the policy, read in the light of existing circumstances, has shown that the person claiming the benefit was not such a person as those effecting the policy had in contemplation, courts have disallowed his claim though he might be within the description. Boston Fruit Co. v. British & Foreign Marine Ins. Co. [1906] A. C. 336; Yangtsze Ins. Ass'n v. Lukmanjee [1918] A. C. 585.

Moreover, the words "whom it may concern" in the open policy are not the words specifying the persons finally insured, but only set forth the class of people for whom the agents to whom the policy ran might issue certificates of insurance. This is especially clear from the rider changing the agents from Whist & Co. to Maritime Underwriting Agency, Inc. By this rider the insurance was made payable to "interests as may be agreed upon." The certificate, and not the open policy, designated those persons. The certificate proper runs to the libelant "and/or as agents." There is no proof that the libelant was acting as agent for the respondent. Proof is also lacking that, if the words "whom it may concern" are to be read into the certificate, as we do not believe they should be, the insurance was ever intended to include such an interest as the obligation of a cargo-owner to pay freight. Such an interest cannot be inferred merely because insurance was unnecessarily taken out for the libelant, when the latter, as it finally turned out, had no insurable interest, or because the word "agents" was added when no agency has been shown.

[6] The ordinary rule must be followed that insurance on "unpaid and/or collect freight" does not cover the obligation to *pay* freight unless the terms of the policy clearly show an intention to insure the risk of loss of an interest in the cargo representing the addition to its value which is measured by the amount of the freight. We can discover no intention here to cover such an obligee's risk of having to pay freight and we hold that it is not covered by the insurance. Portland Flouring Mills v. British & Foreign Marine Ins. Co. (C. C. A.) 130 F. 860; White v. Upper Hudson Stone Co., 160 C. C. A. 651, 248 F. 893; Boston Fruit Co. v. British & Foreign Marine Ins. Co. [1906] A. C. 336; Minturn v. Warren Ins. Co., 2 Allen (84 Mass.) 86.

The decree is affirmed.