**BOARD OF EDUCATION OF RALEIGH COUNTY, W. VA., v. WINDING GULF COLLIERIES.**

**No. 5418.**

Circuit Court of Appeals, Fourth Circuit.

Dec. 12, 1945.

Clay S. Crouse, of Beckley, W. Va. (Grover C. Trail, of Beckley, W. Va., on the brief), for appellant.

J. W. Maxwell, of Beckley, W. Va. (Floyd M. Sayre, of Beckley, W. Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

The question to be decided in this case is whether the proceeds of certain blanket fire insurance policies, covering a school building in Raleigh County, West Virginia, should be paid to the Board of Education of the County or to Winding Gulf Collieries, a West Virginia corporation on whose land the building had been erected. To obtain a decision the Allemannia Fire Insurance Company, a Pennsylvania corporation, paid the adjusted proceeds of one policy in the sum of $4,771.27 into court and filed a bill of interpleader against the rival claimants so that their claims might be adjudicated.

The total amount of the fire loss was adjusted in the sum of $67,201.02, and it was agreed by all of the insurance companies concerned, forty-two in number, and by the claimants that the decision in this case should determine the right to the entire fund. The case was submitted to the District Court on a stipulation of facts and the court decreed the payment of the fund to the Winding Gulf Collieries. From this judgment the Board of Education appeals.

On August 23, 1924 Winding Gulf Colliery Company conveyed to the Board of Education of the District of Slab Fork of Raleigh County a parcel of land, approximately a half acre in area. The deed contained a provision that as part of the consideration for the conveyance, the property was conveyed for free school purposes and for no other purpose, and that whenever the property should cease to be used for such purposes, it should thereupon revert to and become reinvested in the grantor in fee simple. By deed of August 15, 1929 the grantor conveyed to Winding Gulf Collieries all of its interest in both the school lot and the adjacent tract of which that lot was a part, excepting therefrom the property rights theretofore conveyed to the Board of Education. By an Act of the Legislature of West Virginia of 1933 the Board of Education of Raleigh County became successor to the Board of Education of the District of Slab Fork.

Shortly after the school lot was granted to the Board of Education in 1924 a large brick school building was erected by it on the lot and thereafter was continuously used for school purposes until January 5, 1944, when it was totally destroyed by fire. Thereafter the Board of Education ceased the use of the property for free school purposes and abandoned it and determined to rebuild the high school on a new site.

On December 1, 1943 the Board of Education had insured the school building on the property for the sum of $142,000 for the term of five years, and had paid insurance premiums of $4,265.68. The blanket policies of insurance name the insured as "The Board of Education of the County of Raleigh, as is now or may hereafter be constituted, for account of whom it may concern" and provide that the "loss, if any, under this policy shall be adjusted with and held payable to the Board of Education of the County of Raleigh." The policies further provide that "The Board of Education * * * shall be deemed the owner of the property * * * and no defect in the title to such property shall invalidate this policy"; and also that the insurance shall not be affected by the fact that the property covered may be situate on land not owned by the assured in fee simple.

■ It is not disputed by the Board of Education that the land conveyed to it for school purposes in 1924 has now reverted to the Collieries; but the Board of Education claims that it is entitled to the proceeds of the policies of insurance which it placed upon the building. The position of the Collieries in support of the judgment of the District Court is that it has not only acquired full title to the land by reversion, but also full title to the proceeds of the insurance policies in place of the building that was burned. Reliance is placed upon the well known rule that the owner of a reversion in land is entitled upon the expiration of the preceding estate to the permanent fixtures and improvements placed thereon during the term and at the expense of the preceding estate, and it is contended that since the school building has been destroyed, the Collieries is entitled to the insurance money in its place and stead. This contention is supported by decisions [1] which hold under certain circumstances that when the whole fee in a property is insured against fire by a policy taken out in the name of a life tenant and he collects the full insurance, he is deemed to be acting for the remainderman as well as for himself and the proceeds of the insurance stand in place of the property destroyed and must be used to rebuild it or be held by the life tenant for himself for life and after his death for the remainderman.

This contention is further supported by reference to the phrase in the policy which designates the insured, as the Board of Ed-

[1] Miltenberger v. Beacom, 9 Pa.St. 198; Clyburn v. Reynolds, 31 S.C. 91, 9 S.E. 973; Green v. Green, 50 S.C. 514, 27 S.E. 952, 62 Am.St.Rep. 846; Haxall's Ex'rs v. Shippen, 10 Leigh 536, 34 Am.Dec. 745; Brough v. Higgins, 2 Gratt 408; Crisp County Lumber Co. v. Bridges, 187 Ga. 484, 200 S.E. 777, 126 A.L.R. 333; Culbertson v. Cox, 29 Minn. 309, 13 N.W. 177, 43 Am.Rep. 204; Clark v. Leverett, 159 Ga. 487, 126 S.E. 258, 37 A.L.R. 180; Welsh v. London Assurance Corporation, 151 Pa.St. 607, 25 A. 142, 31 Am.St.Rep. 786; Sampson v. Grogan, 21 R.I. 174, 42 A. 712, 44 L.R.A. 711.

ucation of the County of Raleigh, as is now or may hereafter be constituted, "for account of whom it may concern", placing special emphasis on the phrase last quoted; and it is claimed that under the decisions[2] this language must be construed to mean that the property was insured for the benefit of the Board of Education and every other person holding an interest therein, and since the property has been abandoned by the Board of Education for school purposes, the whole proceeds of the policy belong and must be paid to the Collieries to which, under the deed, the land now reverts.

■ We do not think that the cited decisions require the conclusion for which the Collieries contend. An insurance policy is a contract of indemnity and its nature and effect is to indemnify the insured against loss and not another who is not a party to the contract. It is generally held that such other party has no lawful claim upon the amount realized by the insured under the contract. When this rule is applied to a policy covering property held and insured by a life tenant in his own name for his own benefit, who has paid the premiums thereon, it is generally held, in the absence of a fiduciary relationship or an agreement between him and the remainderman, that the life tenant is entitled to the proceeds of the insurance upon a loss; and the fact that the insurance was placed for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds of the policy. See Ann. 126 A.L.R. 333, 345. This rule was applied in Thompson v. Gearheart, 137 Va. 427, 119 S.E. 67, 35 A.L.R. 36, by the Supreme Court of Appeals of Virginia to whose earlier decisions the appellee refers, as shown by the foregoing citations. In Thompson v. Gearheart the grantee of life tenants insured the buildings on the property conveyed which were destroyed by fire during the life of the policy but after the death of the life tenant, and the grantee collected the insurance. The remaindermen set up a claim thereto but the court in deny-ing the claim said (137 Va. at pp. 431, 432, 119 S.E. at page 68, 35 A.L.R. 36):

"The life tenant was under no obligation to insure the property for the benefit of the remaindermen. Each of them had an insurable interest in the property, but a policy in the name of one could not cover the interest of the other. The nature and effect of an insurance contract is to indemnify the insured against loss or damage, and not someone else who is not a party to the contract, nor has such other party any lawful claim upon the amount realized by the assured under the policy.

\* \* \* \* \* \*

"In the case of Harrison v. Pepper, 166 Mass. 288, 44 N.E. 222, 33 L.R.A. 239, 55 Am.St.Rep. 404, the Supreme Judicial Court of Massachusetts, considering a similar case, said: 'In the absence of anything that requires it in the instrument creating the estate, or of any agreement to that effect on the part of the life tenant, we think that the life tenant is not bound to keep the premises insured for the benefit of the remaindermen. Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy, any more than in the case of mortgagor and mortgagee, or lessor and lessee, or vendor and vendee.' \* \* \*

"The court further on says: 'Nor can the defendant be converted into a trustee for the plaintiff by the mere fact that the amount which she received was equal to the full value of the house. It was paid to and received by her as indemnity for the loss which she had sustained, and, as already observed, does not stand in the place of the property. \* \* \* If the contract is one of indemnity to the insured for the loss sustained by him, it is difficult to see how a sound public policy could be subserved by holding that he shall use what belongs to him for the benefit of some one else.' "

The doctrine of this case was reaffirmed and applied in Clements v. Clements, 167 Va. 223, 188 S.E. 154.

---

[2] Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 S.Ct. 862, 46 L.Ed. 1229; New Orleans & So. American S. S. Co. v. W. R. Grace & Co., 2 Cir., 26 F.2d 967, certiorari denied 278 U.S. 636, 49 S.Ct. 33, 73 L.Ed. 552; Hooper v. Robinson, 98 U.S. 528, 25 L.Ed. 219; Sheppard v. Peabody Ins. Co., 21 W.Va. 368; Murdock v. Franklin Insurance Co., 33 W.Va. 407, 10 S.E. 777, 7 L.R.A. 572; Fire Ins. Asso. v. Merchants & Miners Trans. Co., 66 Md. 339, 7 A. 905, 59 Am. Rep. 162; Newson v. Douglass, 7 Har. & J. 417, 16 Am.Dec. 317; Martin v. Fishing Ins. Co., 20 Pick. 389, 32 Am. Dec. 220; Ballard v. Merchants' Ins. Co., 9 La. 258, 29 Am.Dec. 444; Howell v. Globe & Rutgers Fire Ins. Co., 133 Misc. 193, 231 N.Y.S. 67.

A good summary of the rule is also found in the following statement quoted from the decision in Gorman's Estate, 321 Pa. 292, 295, 297, 184 A. 86, 87:

"Ordinarily, in the absence of any obligation or agreement to insure for remaindermen, a life tenant who takes out insurance for his own benefit is entitled, as against the remaindermen, to the full proceeds of the policies in the event of loss. * * * The fact that the life tenant's insurance represents the full value of the property is not generally regarded as sufficient, of itself, to create an interest in the remaindermen. * * * A different result has been reached, however, where the insurance was intended to protect the interests of all the parties (Welsh v. London-Assurance Corporation, 151 Pa. 607, 25 A. 142, 31 Am.St. Rep. 786), or where the legal relation between life tenant and remainderman is held to be one of trust, in which event any insurance effected by the life tenant inures to the benefit of the remaindermen: Clyburn v. Reynolds, 31 S.C. 91, 9 S.E. 973; Green v. Green, 50 S.C. 514, 27 S.E. 952, 62 Am.St.Rep. 846. The fact that there was an express fiduciary obligation on the part of the insured to another party having a beneficial interest in the premises seems to have led courts in some instances to depart from the general rule. Clark v. Leverett, 159 Ga. 487, 126 S.E. 258, 37 A. L.R. 180; In re Cameron's Estate, 158 Mich. 174, 122 N.W. 564.

"No facts or circumstances in this case remove it from the ordinary rule permitting the life tenant to retain the entire proceeds of her contract of indemnity. She had no intention of insuring the interests of the remaindermen, nor did she stand in any fiduciary relationship to them. In this state a life tenant is not a trustee of the premises for the remaindermen. Fidelity, etc., Deposit Co. v. Dietz, 132 Pa. 36, 18 A. 1090. While the insurers might have insisted upon the limitation of her recovery to the value of her life estate, it is of no concern to the remaindermen that appellant is to receive the full value of the building. Any argument based upon public policy was for the insurers, and not for the remaindermen. They have no greater claim to the excess than has the life tenant. To say that she must be held to be a constructive trustee of the excess is to overlook the very nature of the transaction. The fund represents indemnity for loss sustained; it does not constitute the proceeds of the property destroyed."

We do not find any special circumstances in the pending case which take it out of the general rule. There was no fiduciary relationship and no agreement between the parties which imposed any liability upon the Board of Education to insure the school building for the benefit of the Collieries, or to account to it for the insurance money. The Collieries rely principally upon the phrase "for account of whom it may concern," incorporated in the designation of the insured, as indicating an intent to protect the reversionary interest. This phrase has been frequently used to prevent the invalidation of policies of insurance through change of ownership or defect in the title of the insured. But the mere insertion of the phrase in a policy does not require the payment of the proceeds in case of loss to one whom the insured had no intention to cover. In discussing the effect of the phrase in Hagan v. Scottish Ins. Co., 186 U.S. 423, 426, 427, 22 S.Ct. 862, 863, 46 L.Ed. 1229, the court said:

"The first step * * * is to determine what interest the person taking out the policy intended to protect. It is not essential that he should have any specific individual in mind. It is enough that he intended to protect the interest that afterwards passed to the person injured; and if he so intended, the policy may be adopted afterwards by a subsequent sole or partial owner of the interest, although such owner may have been unknown to the person taking out the insurance, or to the company, at the time the policy was written.

" * * * it is not necessary that at the time of effecting the insurance the person taking it out should intend it for the benefit of some then known and particular individual, but that it would cover the case of one having an insurable interest at the time of the happening of the loss, and who was intended to be protected at the time the party took out the insurance." See also, New Orleans & So. American S.S. Co. v. W. R. Grace & Co., 2 Cir., 26 F.2d 967, certiorari denied 278 U.S. 636, 49 S.Ct. 33, 73 L.Ed. 552; Newson v. Douglass, 16 Am. Dec. 317; Howell v. Globe & Rutgers Fire Ins. Co., 133 Misc. 193, 231 N.Y.S. 67; Frierson v. Brenham, 5 La.Ann. 540, 52 Am. Dec. 603; DeBolle v. Pennsylvania Ins. Co., 4 Whart. 68, 33 Am.Dec. 38.

There was and could have been no intention on the part of the Board of Education to protect the Collieries when it insured the school building in question. It was acting to safeguard the public interest so that in case of the loss of the building means to rebuild it would be available. The phrase, "for account of whom it may concern," was doubtless used in the policy to make doubly certain that in case of loss the proceeds of insurance would be payable to the public authorities charged with the maintenance of the schools, whoever they might be and by whatever name they might then be known. Even if it be assumed that the Collieries would have gotten absolute title to the building if it had been abandoned by the Board before the fire, it by no means follows that the Board could not exercise its discretion to abandon the site after the building had been destroyed. The Board completely performed the contract on its part by using the land for school purposes only, and did not cease to use it until after the fire. Thus, the rights of the parties became fixed at a time when title to the land was still in the Board subject to the reversionary interest in the Collieries. It was not until after the destruction of the building that the Board abandoned the lot for school purposes, and this action was within its authority for it did not promise and doubtless had no power to promise to maintain the school on the land for all time.

It seems to us conclusive on the question of intent that it was specifically decided by the Supreme Court of West Virginia in Board of Education of Raleigh County v. Commercial Casualty Insurance Co., 116 W.Va. 503, 182 S.E. 87, that the power of a Board of Education of the State to take out insurance is strictly limited. The court decided in that case that the Board of Education of the District of Slab Fork, as an arm of the State, had no liability for injury caused by neglect and had no power to take out insurance to protect itself against the negligence of drivers employed by it to operate school buses. The court pointed out that while the Board had statutory authority to manage the schools and to provide transportation for pupils at public expense, it was a governmental agency of limited authority and could exercise no function not expressly conferred or clearly implied by the terms of the statutes. Although the contract had been executed, the Board of Education was allowed to recover the premiums which it had paid to the Insurance Company since the statutes of West Virginia expressly stipulate that any money unlawfully paid by a Board of Education or other fiscal body of the State shall be recovered from the person to whom paid.

The Collieries urge upon us the decision in Hawes v. Lathrop, 38 Cal. 493, in which the facts bear some resemblance to those of the case at bar, but in our opinion are nevertheless distinguishable in substantial particulars. Land on which a building was erected was conveyed to certain parties in trust for the purpose of establishing and maintaining a school, and the trustees made an addition thereto and caused the whole to be insured. The building was later destroyed by fire and the loss paid to the trustees. A provision in the trust deed declared that if the design for the school should prove unsuccessful, the trustees by resolution should so declare and thereupon the title to the property should revert to the grantor. The trustees did so declare after the fire and reconveyed the premises. It was held that the proceeds of the policy of insurance should not be used to restore to the givers certain donations of money which had been made for the benefit of the school without condition, but should be paid to the owner of the reversion. The reasons given were that upon the passage of the resolution the trustees had no further duties to perform in maintaining the school and the school had no existence, and hence it became their duty to pay over the insurance money to the owner of the reversion, no other person having any plausible claim thereto. The distinction between these circumstances and those in the instant case are manifest. Here the school continued to exist and it was obviously the duty of the Board of Education to use the insurance money to maintain it for the county. In any event, we are unable to follow the decision of the California court insofar as it may be thought to differ from the views herein expressed.

The judgment of the District Court must be reversed and the case remanded to the District Court with directions to enter a judgment in the sum of $4,771.27 in favor of the Board of Education with costs, the costs to include the sum of $500 for an attorney's fee in that amount allowed to the attorneys of the Allemannia Fire Insurance Company for services rendered in bringing this suit to test the ownership of

the entire fund of $67,201.02. See Swiger v. Hayman, 56 W.Va. 123, 48 S.E. 839, 107 Am.St.Rep. 899, 3 Ann.Cas. 1030; Pettus v. Hendricks, 113 Va. 326, 74 S.E. 191; Union Mutual Life Ins. Co. v. Lindamood, 108 W. Va. 594, 152 S.E. 321.

Reversed and remanded.

