## County Board of Education for Jefferson County, et al. v. Littrell, et al.

(Decided January 5, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, No. 1).

1. Deeds—Breach of Conditions—Reversions—Construction.—A deed conveying a tract of land to the trustees of a common school district and reserving the reversion of the title to the grantor and his heirs should the property cease to be used for public school purposes, construed, and held to provide for a reverter in case the property ceased to be used for white school purposes, in view of the fact that the grantees were white school trustees and had no control over colored schools, nor power to use white school property for colored school purposes.

2. Deeds—Breach of Conditions—Reversions.—Under a deed conveying a tract of land to common school trustees and providing for a reversion of the title to the grantor or his heirs when the property should cease to be used for public school purposes, which was to be determined when the district, through its lawful authorities, should select, locate and establish a public school house elsewhere, the title reverts when the proper school authorities locate and establish another public school for white children in the district and use the property conveyed by the deed for colored school purposes.

3.  Deeds—Breach of Conditions—Reversions.—Under such a deed the use of the property as a storage place for school materials for white children, or as a meeting place for the division board of education acting in behalf of white children, will not prevent a reverter, since the object of the deed was to convey the site for the purpose of conducting a school thereon and not as a mere storage or meeting place.

4.  Constitutional Law—Obligations of Contracts.—Kentucky Statutes, section 4437, providing that any reversionary interest in land now used as a school site will not deprive the districts of the school house or improvements thereon, is invalid as to reversionary interests created by deeds executed prior to its enactment, since, under such deeds, the right of reversion carries with it the right to the improvements, and the statute, therefore, violates the obligations of such contracts.

EDWARD C. WURTELE for appellants.

BURWELL K. MARSHALL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On November 1st, 1888, John N. Littrell, in consideration of $1.00 in hand paid, and the further consideration that the property was to be used for public school purposes, conveyed a tract of land containing about one acre to D. H. Wilhoyte, D. S. Taylor and P. G. Williams, Trustees of School District No. 56 of Jefferson county. After describing the land, the habendum clause of the deed reads as follows: "To have and to hold for aforesaid school purposes and to revert to the said first party, his heirs or assigns when it ceases to be used for public school purposes, which will be determined when the aforesaid district No. 56 of said county and state shall, by its lawful, proper authorities select, locate and establish a public school house elsewhere."

The original grantor, John N. Littrell, and his wife, are now dead. This suit was brought by R. E. Littrell and others, the only children of John N. Littrell, against the County Board of Education of Jefferson county, to recover the land, together with the schoolhouse thereon, on the ground that the property had ceased to be used for public school purposes and the title thereto had reverted to plaintiffs. From a judgment in favor of plaintiffs the county board of education appeals.

There is no dispute as to the material facts, which are as follows: When the deed was made the law provided for the election of colored school trustees for colored schools and white trustees for white schools. No tax could be levied on the property of white persons for colored schools, or on the property of colored persons for white schools. White children could not attend the colored schools, nor could colored children attend the white schools, and it was not lawful to use for one class money collected for the other class. Section 4524, Kentucky Statutes, 1894. The original grantor was a white person and the trustees of School District No. 56 were also white. These trustees had no supervision nor control over the colored schools. When the lot was conveyed there was on it a small house, which was at first used as a public school. In 1899 the school district erected the present school building. The County Board of Education of Jefferson County is the successor in title of the trustees of School District No. 56. Section 4426a, Kentucky Statutes. In the year 1915 the county board consolidated School District No. 56 with other districts and sent the pupils thereof to a new schoolhouse located in School District No. 56 and about a mile from the old schoolhouse. At the same time it converted the Littrell property into a school for colored children and began to use it for that purpose. It also used the property as a storage place for school materials for white children and as a meeting place for the division board acting in behalf of white children. However, the county board claims that this arrangement was not a permanent one, but was to be discontinued in the event it was found to be unsatisfactory.

The county board takes the position that the condition on which the estate was to revert has never happened, but that the property, which is now used as a storage place for school materials for white children and as a meeting place for the division board acting in behalf of white children, and also for colored school purposes, is still being used for public school purposes within the meaning of the deed. Clearly the property was conveyed for the purpose of conducting a school thereon and not as a storage place for school materials, or a meeting place for the division board. Hence the use of the property for these purposes would not be sufficient to prevent a reversion. Under the deed, the

property was to revert when it ceased to be used for public school purposes. The reversion was to take effect when the district should select, locate and establish a public school elsewhere. The deed should be interpreted in the light of the character, situation and purposes of the parties and of the law then in force. The grantor was white. So were the grantees. The grantees had no control whatever over colored schools and no power to use white school property for colored school purposes. Under these circumstances, we conclude that the purpose of the grantor was to convey a site to be used for white school purposes and to provide for a reversion in case it ceased to be used for those purposes. It is admitted that a new site for a school house in the district in question has been located and established elsewhere, and that the white pupils of that district are now required to attend the new school. Not only so, but the school site conveyed by the grantor has ceased to be used as a school for white children and is now used solely by colored children. It follows that the chancellor did not err in holding that the property had reverted to the plaintiffs.

The next question is whether the chancellor erred in holding that the county board did not have the right to remove the schoolhouse. The county board insists that the right of removal is authorized by section 4437 of the Kentucky Statutes, which provides: ''Any reversionary interest in any land now used as a site for a schoolhouse shall not deprive the district of a schoolhouse or other improvements thereon.'' The deed of contract under which the trustees of School District No. 56 acquired title was executed in the year 1888. The statute in question was not enacted until the year 1893. The estate which the grantor and his heirs had in the property conveyed, and which was to become effective on the happening of the condition expressed in the deed, was a present vested interest of the nature of a reversion. 2 Washburn, 6th edition, section 968. Under the law as it stood when the deed was executed, the right of reversion retained in the deed carried with it the right to the improvements erected on the land, in the absence of an agreement to the contrary. Union Bethel Church v. Thomas G. Gaylord, 1 R. 403.

It is the well-established rule that the law which subsists at the time and place of making a contract,

enters into and forms a part of it, as if it were expressly referred to or incorporated in its terms. 6 R. C. L., page 325, section 314; McCracken v. Hayward, 2 How. 608, 11 U. S. (L. ed.) 397. The contractual rights of a citizen are protected by article 1, section 10 of the Federal Constitution, providing that no state shall pass any law impairing the obligation of contracts. Prohibition being absolute, the amount and the extent of the impairment is immaterial. Farrington v. Tennessee, 95 U. S. 679, 24 U. S. (L. ed.) 558. Any act which changes the expressed intention of the parties to a contract, or such as results from their stipulations, is held to impair its validity, and it is immaterial as to the degree or nature of the change, whether it relates to its validity, construction, duration, discharge, or the evidence of the contract; in all cases the conclusion is the same. 6 R. C. L., page 329, section 319; Green v. Biddle, 8 Wheat. 1, 5 U. S. (L. ed.) 547; Walker v. Whitehead, 16 Wall. 314, 21 U. S. (L. ed.) 357 Since under the law which entered into and formed a part of the contract the grantor and his heirs had the right to the improvements on the land whenever the title thereto reverted, it is clear that the act in question, giving to the school authorities the power to remove the improvements, materially lessens the value of the rights acquired by the contract and, therefore, impairs its obligations. Evans v. Cropp, 141 Ky. 515, 113 S. W. 221. The fact that the schoolhouse was erected after the act took effect is immaterial. The case turns on the grantor's rights when the contract was made and on whether those rights have been impaired. Having the right under the contract, in case of a reversion, to retain the improvements without regard to the time of their erection, it is clear that the statute, if construed so as to give the grantees, or their successors in office, the right to remove the improvements, erected after its enactment—a right which did not exist when the contract was made—would also impair the obligations of the contract as effectually as if it gave the right to remove the improvements erected prior to its enactment. We, therefore, conclude that the statute is invalid as to reversionary interests created by contracts executed prior to its enactment.

Judgment affirmed.