## Cotton et al. v. Walton-Verona Independent Graded School Dist.

Oct. 15, 1943.

480

Rogers & Rogers for appellants.

Vest & Vest for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

.The plaintiff, and appellee, Walton-Verona Independent Graded School District, is a rural school unit duly established in which a graded school is conducted in Boone County with the power to demand and require ad valorem rates of taxation to be levied upon the property of the taxpayers of the district by the fiscal court of the county, which was done and the levy was made by the fiscal court for all the years involved in this action.

The appellant, and a defendant below, W. B. Cotton, was elected sheriff of the county in the year 1933 for the full term of four years from January 1, 1934. On December 22, 1933, he qualified as such incoming officer and executed the bond required by Section 1884 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes (Sections 134.310 and 134.250 KRS), and Section 4556 (Section 70.020 KRS), the first one being commonly known as the tax levying bond, whilst the latter is known as the official bond. The other appellants, and defendants below, were sureties on each bond, both of which were accepted and recorded by the authority before whom they were executed. At the time Cotton was installed in office a collector of school taxes was entitled to retain four percent of the amount of collections as fees for his service; but by Chapter 65 of the Acts of 1934—which was a general rehauling and re-codification of our public school law— the amount of the fee which could be retained by the collector of school taxes was reduced from four percent to one percent of the collections made by him. No such taxes became due and collectible by Cotton until July 1, 1934. The same chapter of the 1934 Acts made provision for the collection of taxes due to all independent schools within the Commonwealth as maintained in and by the various classified cities, and as maintained and operated exclusively in rural territory.

In none of them was the sheriff made the collector by virtue of his office or otherwise, except in the latter class of independent rural school districts of which plaintiff, and appellee, is one. So that at the time the sheriff undertook (which he was not compelled to do but only given the authority in the absence of a specially elected collector) to collect the taxes for plaintiff for the scholas-

tic year beginning July 1, 1934, he was entitled to only one percent of the amount of taxes collected by him and the same was true throughout his term of four years. But instead of retaining only the one percent of his collections he retained four percent thereof for the school taxes collected by him for and on behalf of plaintiff throughout the four years of his incumbency. Plaintiff demanded of him the excess amount retained of three percent of his collections, aggregating throughout the four years $1,654.63 with interest from each period throughout the four years when he was required to make settlement.

Defendants answered, relying on the provisions of Chapter 20, page 55 of the 1934 Acts which amended Section 4134 of the 1930 Edition of Carroll's Kentucky Statutes (Sections 134.230, 134.260, 134.270 KRS), which amendment added two provisos to that section. One of them prescribed that the sureties on the sheriff's bond should be liable only for defalcations made by him "during the year in which said bond may be executed, whether the liability accrues before or after the execution of such bond or bonds" and that they "shall not in any event be liable for any act or default of the sheriff occurring in any calendar year other than that within which the bond or bonds shall have been executed." The other proviso of the 1934 amendment prescribed that "neither the sheriff nor a surety or sureties on any bond or bonds executed by the sheriff shall be liable for any act or default of the sheriff unless (notice of) the act or default of the sheriff giving rise to a claim upon such bond shall have been given to the surety or sureties * * * ninety days after such discovery or at the latest within the period of one year from and after the end of the year within which such bond or bonds shall have been executed." (Our parenthesis.)

Plaintiff demurred to the answer which the court sustained upon the ground that the 1934 amendment referred to was special legislation in violation of Subsection 15 of Section 59 of our Constitution forbidding the enactment of any special act regulating "the levy, the assessment or the collection of taxes, or to give any indulgence or discharge to any assessor or collector of taxes, or to his sureties." The court was of the opinion that since the 1934 amendment to Section 4134, supra, applied only to sheriffs when they collected taxes (includ-

ing school taxes where they were authorized to do so) and did not apply to other collectors of school taxes and their sureties, the attempted classification was unauthorized and invalid. Defendants declined to plead further and judgment was rendered in favor of plaintiff, from which this appeal is prosecuted.

In the case of Leslie County v. Maggard, 212 Ky. 354, 279 S. W. 335, 336, we held that sheriff's bonds "given * * * at the beginning of his term cover his whole term and that the renewal bonds executed annually (thereafter) are merely additional security." As authority for that statement the cases of Schuff v. Pflanz, 99 Ky. 97, 35 S. W. 132; Fidelity & Deposit Co. v. Commonwealth, 104 Ky. 579, 47 S .W. 579, 49 S. W. 467; Renshaw v. Cook, 129 Ky. 347, 111 S. W. 377; Burton v. American Bonding & Trust Co., 182 Ky. 637, 206 S. W. 884 and Gay v. Jackson County Board of Education, 205 Ky. 277, 265 S. W. 772, are cited. A later case to the same effect is Fidelity & Deposit Co. of Maryland v. Brown, 230 Ky. 534, 20 S. W. (2d) 284. Such was the law at the time the bond herein sued on was executed.

In the case of Mt. Vernon Independent Graded School Dist. v. Clark et al., 281 Ky. 230, 135 S. W. (2d) 892, the precise questions as to the effect of the 1934 amendment to Section 4134, supra, on bonds executed prior to its effective date were presented to this court in an action exactly parallel in its facts to the instant one. We held therein that the bond executed by the sheriff when approved and recorded became a contract between him and his sureties on one side, and the parties for whose benefit the bonds were executed on the other side, the obligations of which could not be impaired by subsequent legislation, which is inhibited by both the Federal Constitution, Article 1, Section 10, and Section 19 of our Constitution. However, it is universally held that such inhibitions will not be violated by amendments or changes in the law with reference to the levying or compensation for collecting of taxes which is strictly within the police power of the state. It was, therefore, held in the Mt. Vernon case that the attempted limitation of the liability of the sureties to the year in which the bond was executed by the 1934 amendment, as well as the requiring of the giving of the notice therein specified, were each invalid as to bonds executed and delivered before the taking effect of that amendment.

It would seem, therefore, that we need discuss the question no further, except for the fact that it is argued by learned counsel for appellants that the requiring of notice as prescribed by the 1934 amendment affects only the remedy, and that the constitutional provisions forbidding legislation impairing the obligation of a contract do not apply to legislation altering or changing the remedy, provided, however, a reasonable remedy is substituted. But we do not agree with counsel in their contention that the provisions of the involved amendment were remedial, since neither of them (the one limiting the liability to the year in which the bond was executed nor the one requiring notice) in any manner affected the remedy of anyone having the right to recover on the bond. The same limitations of fifteen years as applied to the principal, and seven years as applied to the surety, were left untouched by the amendment. It, as we shall show, exclusively affected and impaired the obligations of the sureties on the bond they executed. When it was executed it covered the entire period, as we have seen, of the entire term of the sheriff. Also when the bond was executed the liability assumed by the sheriff and his sureties was absolute throughout that period, being conditioned in no respect whatever in order to preserve its continued obligatory force.

It is not insisted that the limiting of the liability to only one year did not impair the obligation of the sureties and principal who executed the bond which, no doubt, is due to the fact that counsel recognized that by cutting down the period over which it extends, and limiting the liability of the obligor to only such shortened period, clearly and obviously impaired the obligation. But it is equally apparent, and is obviously as true, that the imposition of the proviso in the amendment requiring notice to be given to the sureties of their principal's defalcation—within the time prescribed—as a prerequisite to their continued absolute liability, also impairs the obligation of the contract. It was so expressly held in the Mt. Vernon case and which is the effect of the opinion in the case of Board of Education, etc., v. Littrell, 173 Ky. 78, 190 S. W. 465, 466, in which in discussing the constitutional interdiction we said: "It is the well-established rule that the law which subsists at the time and place of making a contract, enters into and forms a part of it, as if it were expressly referred to or incorporated in its terms. 6 R. C. L., p. 325, Section 314; McCracken v.

Hayward, 2 How. 608, 11 L. Ed. 397. The contractual rights of a citizen are protected by article 1, Section 10 of the Federal Constitution, providing that no state shall pass any law impairing the obligation of contracts. Prohibition being absolute, the amount and the extent of the impairment is immaterial. Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558. Any act which changes the expressed intention of the parties to a contract, or such as results from their stipulations, is held to impair its validity, and it is immaterial as to the degree or nature of the change, whether it relates to its validity, construction, duration, discharge, or the evidence of the contract; in all cases the conclusion is the same. 6 R. C. L., page 329, Section 319; Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 547.''

Long before the rendition of the two cited domestic cases (Board of Education, etc., v. Litterell, 173 Ky. 78, 190 S. W. 465, and Mt. Vernon Independent Graded School Dist. v. Clark, 281 Ky. 230, 135 S. W. (2d) 892), this court on October 11, 1823, in the case of Lapsley v. Brashears and Barr, 4 Litt. 47, in determining what constituted "impairment of the obligations of contracts" within the meaning of the constitutional provisions, said: "To be in conflict with the constitution, it is not necessary that the act of the legislature should import an actual destruction of the obligation of contracts; it is sufficient that the act imports an impairment of the obligation. If, by * * * any degree impaired; or, what is the same thing, if the obligation be weakened, or rendered less operative, the constitution is violated, and the act so far inoperative.'' Such pronouncements of this court with reference to the question under consideration is in harmony with all text authorities, as well as opinions of other American jurisdictions. In the text of 12 Am. Jur. 19, Section 390, it is said in part, "the obligation of a contract is impaired by statute which alters its terms by imposing new conditions or dispensing with conditions, or which adds new duties, releases or lessens any part of the contract obligation.'' In the same section the text says: "It may also be stated that this contractual provision is considered as rendering void any statute which is retrospective and which destroys a vested right of action arising ex contractu.'' In the prior section of 386, page 14, it is pointed out that subsisting laws at the time and place of the making of a contract enter into and became a part of it the same as if

the law was expressly incorporated in the contract. All other text authorities (and we have consulted all of them), including Mr. Cooley on Constitutional Limitations, Vol. 1, pp. 55, 582, 584 and 592; also Vol. 29, Words and Phrases, Permanent Edition, pp. 52 to 55, are in accord with the conclusions reached in the cited domestic cases.

In the case of Henderson v. Phoenix Ins. Co., 233 Ky. 217, 25 S. W. (2d) 359, the same principle was involved and so determined. The plaintiff, and appellee in that case, took a bond from one of its agents indemnifying it against any defalcation on the part of the agent. A surety on that bond was the appellant, Henderson. When sued on the bond—which was absolute in its terms —he defended on the ground that the obligee in the bond had not acted in good faith towards the surety in that it had indulged its agent without the consent of or notice to the principal. We held, however, that no indulgence of a binding nature had been extended to the agent, and that, the contract being absolute in its terms, notice to the surety on the bond could not be demanded by him without such provision being contained in the contract, and to do so would materially alter the bond by injecting into it a provision that it did not contain. If such an alteration impaired or changed the obligation of the contract in that case it would be difficult to hold that it would not do so in this one. It is true that the contract there involved was strictly a private one but the law is universal that the constitutional provision against impairment of contracts applies to those made to the public and for the benefit of the public as well as to strictly private contracts. As such an impairment could not be inserted by one of the parties it would seem to necessarily follow that it could not be done by any subsequent enactment by the Legislature.

When the bond sued on in this case was executed all of the rights which it and the prevailing applicable law injected into it became vested in any member of the public having the right to resort to the bond for his protection. Such vested right was, as we have said, an absolute one subject to no conditions whatever, and when the Legislature after such rights became vested attempted to curtail them, or to impose conditions in order to keep alive the obligations assumed, it clearly impaired the terms of the contract contrary to the constitutional

provisions referred to, and which made the amendment inapplicable to the bond upon which the action is based. We have been unable to find any case contrary to the conclusion above expressed. Although the court based its judgment on another ground it was nevertheless correct. In basing our conclusion upon a different ground from that upon which the trial court rested its judgment, we decline to determine the correctness of the court's conclusion as a basis for its judgment and which question is left open.

Wherefore, the judgment is affirmed.

The whole Court sitting.