ALLEMANNIA FIRE INS. CO. v. WINDING GULF COLLIERIES et al.

Civ. A. No. 433.

District Court, S. D. West Virginia.

April 9, 1945.

Steptoe & Johnson, of Charleston, W. Va., for plaintiff.

Clay S. Crouse, of Beckley, W. Va., for defendant Board of Education of Raleigh County.

Floyd M. Sayre and J. W. Maxwell, both of Beckley, W. Va., for defendant Winding Gulf Collieries.

BEN MOORE, District Judge.

The plaintiff Allemannia Fire Insurance Company will be referred to herein as "Insurance Company," the defendant Winding Gulf Collieries as "Collieries," and the defendant The Board of Education of the County of Raleigh as "The Board."

On April 26, 1924, the Board of Education of Slab Fork District, Raleigh County, West Virginia, authorized a bond election for the issuance of $130,000 in bonds, principally for the purpose of erecting a district high school building. The bond issue having been ratified by the voters of the district, the surface of a tract of land consisting of approximately one-half acre was conveyed by the Winding Gulf Colliery Company, predecessor in interest of Collieries, to the Board of Education of the District of Slab Fork, predecessor in interest of The Board, without other consideration, so far as the pleadings disclose, than a covenant by the grantee that the property be used solely for school purposes. The deed was dated August 23, 1924, and the covenant to use the land for school purposes only is expressed in the following paragraph of the deed, which also provides for automatic reversion of title to the grantor in case of cessation of such use: "It is further distinctly understood and agreed by and between the parties hereto as a part of the consideration for this conveyance, that the property hereby conveyed is for public free school purposes only and for no other purpose or purposes and that the same and no part thereof shall at any time be used for any other purpose or purposes whatsoever and that whenever the said property hereby conveyed shall cease to be used for public free school purposes, the same and every part thereof shall thereupon ipso facto revert to and become re-invested in, the said party of the first part, its successors or assigns in fee simple, with like force and to the same effect as if this conveyance had never been made."

After acquiring the half acre of land conveyed by the foregoing deed, the Slab Fork District Board of Education caused a high school building to be built thereon, which was used continuously for school purposes until destroyed by fire, as will later appear.

Winding Gulf Colliery Company, grantor in the deed, later changed its name to Winding Gulf Collieries. By legislative adoption of the County Unit School System the Board of Education of the District of Slab Fork was absorbed into and became a part of the Board of Education of the County of Raleigh.

On December 1, 1943, the Insurance Company issued a blanket policy of fire insurance in the amount of $142,000 covering "all buildings and structures of every description, now existing or hereafter erected or acquired and on all contents thereof, property of the assured, including those items which by the terms of the policy must be specifically mentioned, but excluding those items as may further herein below be specifically excepted or excluded, the property of the insured; and on the interest of the insured in and/or legal liability for similar property belonging in whole or in part to others, and held by the insured either sold but not removed, on storage or for repairs, or otherwise held; occupied for educational purposes and purposes necessary or incidental thereto, while located on premises owned, occupied, leased or used by the assured in Raleigh County, West Virginia."

The term "assured" is defined as "The Board of Education of the County of Raleigh as is now or may hereafter be constituted for account of whom it may concern," and this definition is immediately followed by the provision that "loss, if any, under this policy shall be adjusted with and held payable to the Board of Education of

the County of Raleigh." Among the special conditions of the policy are the following: "This insurance shall not be invalidated by the existence of any mortgage or trust deed or other incumbrance that may now or hereafter be in force affecting the property above described, * * *. The Board of Education of the County of Raleigh as may now or hereinafter be constituted, shall be deemed the owner of the property herein named, described and covered by this policy, and no defect in the title to such property shall invalidate this policy in whole or in part.

"Should any of the within described property be situate on lands not owned by the assured in fee simple, this insurance shall not be affected thereby."

On the night of January 4, 1944, or early in the morning of the following day, a fire occurred which entirely destroyed the high school building. The total amount of the loss was adjusted at a figure of $67,201.02. The amount in controversy in this action is the sum of $4,771.27, but it has been agreed that a large number of other insurance companies are severally liable for other amounts making up the total loss, and that payment thereof will be governed by the final disposition of the smaller amount involved in this case.

On December 22, 1944, the Insurance Company filed this action of interpleader, whereby it deposited in the registry of this court the amount of $4,771.27, alleging that The Board and Collieries were asserting conflicting claims to the proceeds of the fire insurance. The Board filed its answer on January 18, 1945, and Collieries filed its answer on January 30, 1945, which was afterwards amended by an answer filed on March 6, 1945. Collieries answer sets up the facts as above outlined, and bases its claim to the insurance money on the provisions of the deed of conveyance relative to use of the property for school purposes, and reversion in the event of cessation of such use, together with the provisions of the insurance policy, and in particular that provision whereby The Board is designated as the assured "for account of whom it may concern." Collieries alleges in its answer that upon destruction of the building by fire The Board ceased to use the land for school purposes and does not contemplate any further such use; and that by the terms of the deed the property has reverted to the grantor and is now owned by Collieries.

The Board has filed a motion to dismiss the answer of Collieries, "because the answer fails to state a claim against the defendant The Board of Education of the County of Raleigh, West Virginia, upon which relief can be granted."

In order to pass upon the sufficiency of Collieries' answer, it is necessary to construe the applicable provisions of both the deed and the insurance policy.

■ The paragraph from the deed quoted above has a double aspect. First, it passes to the grantee a qualified estate in the land, which is variously referred to in the law as a determinable fee, or a fee on a conditional limitation; and secondly, it provides expressly for automatic reversion of the fee to the grantor upon the happening of the event which may terminate the qualified fee. It is probable that even without the express provision for automatic reversion, the grantee's estate would be terminated whenever the land ceased to be used for school purposes; Copenhaver v. Pendleton, 155 Va. 463. 155 S.E. 802, 77 A.L.R. 324; Board of Education v. Littrell, 173 Ky. 78, 190 S.W. 465; but with the inclusion of that provision there can be no doubt that upon The Board ceasing to use the land for school purposes it would immediately revert to the grantor, its successors or assigns, in fee simple; and, of course, all improvements to the land, and particularly all buildings on the land, would revert as part of the real estate. Richey v. Corralitos Union School District, 67 Cal.App. 708, 228 P. 348; Board of Education v. Littrell, supra.

■ It is clear that under the facts in this case Collieries had an insurable interest in the high school building, whether its estate in the land, being merely a possibility of reverter after a determinable fee, was a vested estate, to become effective on the happening of the condition expressed in the deed, as is held in some cases (Board of Education v. Littrell, supra), or merely a contingent right growing out of the possibility of having an estate in the future. Copenhaver v. Pendleton, supra. It did have an interest in the building. That interest consisted in its right to be reinvested with the fee simple title upon the happening of the condition which might terminate the qualified fee vested in The Board. Sheppard v. Insurance Company, 21 W.Va. 368; Lucas v. Liverpool & London & Globe Insurance Company, 23 W.Va. 258, 49 Am.Rep. 383.

68

In construing the insurance policy it is important to note that it was a blanket policy, covering no specified property, but applicable alike to any and all buildings and structures of every description then existing or thereafter erected or acquired. This provision, together with the definition of the assured as The Board "for account of whom it may concern," followed by a stipulation that any loss was to be payable to The Board, and a special condition that the insurance should not be affected by the fact that any of the property might be "situate on lands not owned by the insured in fee simple," gives rise to a clear inference that The Board intended to insure the complete title, however that title might be owned. The phrase "for whom it may concern" has a well recognized meaning in the law of insurance, and creates the presumption of an intention on the part of the named assured to cover any and all persons who may have an insurable interest in the property; in other words, "to protect the whole title without making it necessary to notify the company and obtain its consent to any transfer of interest." Hagan v. Scottish Union & National Insurance Company, 186 U.S. 423, 22 S.Ct. 862, 866, 46 L.Ed. 1229. In such cases it is not necessary that the person who takes out such a policy should have any specified individual in mind, and it is not even permissible to receive oral testimony as to the person whom he may have had in mind. New Orleans & S. A. S. S. Co. v. W. R. Grace & Co., 2 Cir., 26 F.2d 967.

A contract of insurance is a personal contract and, in the absence of words indicating a contrary intention, inures to the benefit of the party with whom it is made, and this is true, even though the insured has only a qualified estate in property covered by the policy. Sampson v. Grogan, 21 R.I. 174, 42 A. 712, 44 L.R.A. 711; Clements v. Clements, 167 Va. 223, 188 S.E. 154. But while this is so, and while each party who has an interest can insure that interest solely for his own benefit, yet where the policy of insurance shows on its face an intention that the whole title be insured, it will inure to the benefit of all parties interested in the title, provided they authorized the insurance, or ratified it; and such ratification may be after the loss has occurred as well as before. Lucas v. Liverpool & London & Globe Insurance Company, supra; Murdock v. Franklin Insurance Company, 33 W.Va. 407, 10 S.E. 777, 7 L.R.A. 572; Hagan v. Scottish Union & National Insurance Company, supra.

I cannot agree with the contention of Collieries that The Board owed it the duty to maintain a watchman on the high school premises, and not having done so, is to be deemed guilty of waste upon the occurrence of an accidental fire. I am of opinion that the rights of Collieries do not depend upon the existence of circumstances constituting waste. I agree with the proposition set out in Collieries' brief that when the whole title has been insured and a total loss occurs, the proceeds of the insurance are to be distributed to the owners of the different estates therein, according to their respective rights. The insurance money stands in place of the building. If abandonment has occurred, the reversioner, having been reinvested ipso facto with the fee simple title, should have the entire proceeds; otherwise, the proceeds should be treated as a trust fund to be used for replacing the building. The following cases are illustrative of this principle: Crisp County Lumber Co. v. Bridges, 187 Ga. 484, 200 S.E. 777, 126 A.L.R. 333; Culbertson v. Cox, 29 Minn. 309, 13 N.W. 177, 43 Am.Rep. 204; Chase v. Swayne, 88 Tex. 218, 30 S.W. 1049, 53 Am.St.Rep. 742; Haxall's Ex'rs v. Shippen, 10 Leigh, 536, 34 Am.Dec. 745; Brough v. Higgins, 2 Grat.Va., 408; Hawes v. Lathrop, 38 Cal. 493.

It is urged by The Board that the insurance policy should not be construed to cover the interest of the reversioner in the building because, it says, The Board had no authority to provide insurance for the benefit of Collieries, and, therefore, if it did so its act would be ultra vires. It cites the case of Board of Education v. Commercial Casualty Insurance Company, 116 W.Va. 503, 182 S.E. 87, which holds that a Board of Education may recover from an insurance company premiums paid on public liability and property damage insurance on school buses. There the action was one between the insurance company and the Board. The decision is not applicable to the facts of this case, because here there has been no dispute as to the liability of the insurance company. The entire amount of the loss for which the plaintiff in this case is liable has been paid into the registry of the court, and the other companies have admitted liability and have agreed to pay their respective shares of the

total loss to whichever of the claimants may be held entitled to receive the money. It may well be that The Board had authority to contract for this insurance for the benefit of Collieries, on the principle that under the provisions of the deed giving Collieries the reversion upon cessation of use, it was The Board's duty to take reasonable care of the premises, and this duty could be best discharged by insuring the building. However, that question does not call for decision since it is my opinion that even though the action of The Board were ultra vires, The Board could not take advantage of that fact to defeat the right of Collieries in the proceeds of the insurance policy, under the circumstances of this case.

It follows from what has been said that the motion of The Board to dismiss the amended answer of Collieries will be overruled, and an order to that effect may be submitted for entry.